# CHARLESTON.

DEITZ, *for use v.* PROV. WASH. INS. Co.

Submitted January 25, 1890—Decided March 15, 1890.

1. EVIDENCE—IRRELEVANT QUESTIONS.

   Questions which have no bearing on the issue, or a very remote one, and which are calculated to prejudice the minds of the jury ought to be excluded.

2. EVIDENCE—IRRELEVANT QUESTIONS.

   Questions which, standing isolated, are irrelevant ought to be excluded ; but if counsel, on their responsibility ⁸as such, should state that they expect to follow them up by testimony of the same witness, or others, which will connect them with the case, and show them to be relevant, the court in its discretion, may allow them to be asked, subject to being ruled out, if not so connected ; where there is no promise, or·intimation by counsel that such further and connecting testimony will be adduced, there is no error in excluding such irrelevant questions.

3. EVIDENCE—SUPREME COURT OF APPEALS.

   Where the evidence, not the facts proved, is certified to this Court, the rule, very often announced, is that the judgment will not be reversed, unless by rejecting all the parol evidence of the exceptor, which conflicts with that of his opponent and giving full force and credit to that of the adverse party, the decision of the Court below still appears to be wrong.

4. INSURANCE-COMPANY—WAIVER.

   If an insurance company refuse to pay the loss, or deny its liability, upon independent grounds, before any sufficient proof of loss is made, and before the time within which such proofs are to be made, by the terms of the policy, such denial and refusal constitute a waiver of the condition of a policy requiring such proofs.

5. INSURANCE-COMPANY—CLERICAL ERROR.

   If the agent of an insurance company deputize his clerk to examine certain property, and report upon it, and to write out a policy thereon, and the clerk, while intending to write the name

of the true owner in the policy writes that of her husband, by clerical error and mistake, occasioned by the accidental circumstance that the husband's name happens to be before him, such mistake will not defeat the true owner's right to recover.

6. INSURANCE-COMPANY—DECLARATION—PROOF.

It is not necessary, in order to support a verdict for the plaintiff, that he should prove all the matters set out in the "statement" filed in connection with the declaration, under section 62, chapter 125 of the Code, but only so much thereof as is necessary to sustain the essential averments of the declaration.

7. INSURANCE-COMPANY—AGENT—CLERK.

No insurance-agent can be expected by his company to attend to all the details of his business in person; the company must and should be construed to anticipate the employment of clerks to attend to the office, when the agent is absent or sick; when the agent's clerk is authorized and entrusted to examine property, and write out a policy thereon, his contract and knowledge are the contract and knowledge of the agent, and any accidental mistake which he may make, is the mistake of the agent, and will be corrected in a court of law in an action on the policy.

8. INSURANCE-COMPANY—FALSE SWEARING.

No false swearing by the plaintiff, no matter what his intent, *perpetrated after the writ was issued*, can change the rights of the parties, or affect the verdict, although the policy contain a clause of forfeiture, in case the assured make any false affidavit with intent to defraud the company.

Statement of the case by LUCAS, JUDGE:

This is a writ of error from the Circuit Court of Kanawha County to a judgment in an action on the case, in *assumpsit*, wherein John K. Deitz for the use of his wife, Sarah E. Deitz, was plaintiff and the Providence Washington Insurance Company, now plaintiff in error, was defendant.

The case came before this Court at a former term, on a demurrer to the declaration, and this Court by an order entered on the 14th of December, 1888, reversing the Court below, overruled the demurrer, and remanded the case.

The statement of the case, as furnished by Judge SNYDER in this Court at its former term, will be sufficiently full up to the point where we shall resume it, and trace it along the lines of the present record down to final judgment.

This is an action by John K. Deitz, for the use of Sarah E. Deitz, against the Providence Washington Insurance Com-

pany, brought in the Circuit Court of Kanawha county. The declaration is in the form prescribed by our statute, (section 61, ch. 125, Code 1887) and alleges, that the defendant, by virtue of the insurance-policy herewith filed, owes the plaintiff $1,995.00 for loss in respect to the property insured by said policy caused by fire on or about April 15th, 1887, at the premises described in said policy and then concludes with a promise to pay said sum and refusal to do so, as is usual in actions of *assumpsit.*

The defendant demurred to this declaration, which demurrer the court overruled. The defendant then, under the provisions of section 62 of the statute, obtained from the court an order requiring the plaintiff to file a more particular statement in respect to his claim, and the facts expected to be proved by him at the trial. In response to this order, the plaintiff filed a statement under oath, in which, among other things, he stated, that Sarah E. Deitz, the person for whose use this action is brought, was at the time said insurance was effected, as well as at the time the loss occurred, the owner of all the property insured; that she was then and still is his wife; that he, acting as her agent, procured the insurance of the property, and informed the agent of the defendant, at the time the policy was taken or being made out, that all the property belonged to said Sarah E. Deitz, and instructed the defendant's agent at the time to make out the policy accordingly; that said agent, by *mistake and oversight,* made out the policy after receiving said instructions, and after he, the plaintiff, had left his office, in the name of the plaintiff; that the policy was for some time kept by defendant's agent, and was then handed by him to the said Sarah E. Deitz, and by her laid away until a short time before the fire, and that neither the plaintiff nor said Sarah discovered the mistake until after the fire.

The defendant thereupon demurred to the declaration, and this statement filed in aid of it, and also moved the court to dismiss the plaintiff's action, which demurrer and motion the court sustained, and dismissed the action.

The plaintiff contended the court erred in dismissing the action. The defendant insisted that the action of the court was right, because the facts set out by the plaintiff in

his special statement showed that he never had any insurable interest in the property, or right of action on the policy. The policy is in the name of John K. Deitz, the plaintiff, and describes the property insured by it as belonging to him, and makes no mention of any interest in his wife, or of his effecting the insurance as her agent. The policy also contains the following provisions:

"If the assured shall make any false rspresentation as to the character, situation, or occupancy of the property, or the interest of the assured in the same, * * * or if the property be held in trust or on commission, or by leasehold or other interest not amounting to absolute or sole ownership, * * * it must be so represented to the company, and expressed in the policy in writing; otherwise the insurance as to such property shall be void." * * * * "If any persons other than the assured shall have procured this insurance to be taken by the company, such person shall be considered the agent of the assured, and not of this company ; and this company shall not be bound by any act of, or statement made to or by, any agent or other person which is not contained either in the policy, or in the written application upon which the insurance, or any renewal, is based."

The Circuit Court having sustained the demurrer to the declaration, this Court reversed and remanded the case.

When the mandate of this Court was sent down, and duly entered, the case was proceeded with by the filing of certain "pleas" by the defendant, embraced in a "statement," without formal conclusion, sworn to by the defendant, to which the plaintiff objected and the defendant amended, and the plaintiff again objected, but the objection being overruled, he replied generally, and issue was joined.

As the amendment to the original statement by the defendant will appear in discussing the evidence it is not here inserted, but the original "pleas" or "statement" upon which the issue was made up are here given as follows:

PLEAS.

"JOHN K. DEITZ, *for &c.,*  
         *against*          } *Assumpsit.*  
PROV. WASH. INS. CO.

"The defendant, for plea in this behalf, says the said defend-

ant is not liable to the plaintiff as in said declaration is alleged.

"And the defendant further says that the said John K. Deitz did not procure the insurance of the property in the policy mentioned as the agent of Sarah E. Deitz, nor did he, when said insurance was procured, represent to the defendant, or its agent, that he was acting as her agent, nor did he direct that the policy should be made out in her name, nor did he represent that Sarah E. Deitz was the owner of said property, nor was the policy aforesaid issued by the agent of the defendant by mistake or oversight after having received instructions from the plaintiff as alleged by plaintiff; that no proof of loss was ever made by the plaintiff or received by the defendant as required by the terms of the policy, and that section VI of the policy was never complied with, and that the defendant has never waived the said requirement; that the plaintiff has made false statements and representations to the defendant, or defendant's agents, in regard to the interest he had in the property insured and in regard to the ownership thereof, and that he has made attempts to defraud the defendant by false swearing and otherwise in violation of the provisions of section III of the policy, whereby the said policy has been rendered null and void, and the defendant gives notice that in further defence to this action that plaintiff did, and that it is expected to be so proven that the plaintiff fraudulently and intentionally burned or permitted the property insured or a part thereof, to be burned, and that there was personal property consisting of household and kitchen furniture the plaintiff had sued for, claimed to have been burned, which was not burned, and that the plaintiff claims in said suit to have had and lost property of some kind that he never had, and that was never burned.

"Providence Washington Ins. Co."

The case was tried, and on the 17th day of April, 1889, the jury returned a verdict of $1,070.00 for the plaintiff.

During the progress of the trial the defendant reserved exceptions to the rulings of the court in ruling out sundry interrogatories propounded by the defendant and objected to by the plaintiff, which it is not necessary here to insert, as they will be found in the opinion.

The defendant having moved the court to set aside the verdict, its motion was denied, and in its exception it sets out *all the evidence* adduced, on either side, upon the trial. This evidence, so far as necessary, will be found in the opinion, in substance, and legal effect.

In its petition to this Conrt for writ of error, the defendant sets out the specific errors on which it relies, and as none others have occurred to this Court or are relied on by counsel in their brief, as material, only those so pointed out are discussed, as follows: (See Rule 5, 23 W. Va. 823).

"1. The court erred in refusing to admit proper relevant evidence offered by defendant.

"2. The court erred in refusing to set aside the verdict and grant a new trial, because of the rejection of proper evidence and the giving of improper instructions for plaintiff and refusing proper instructions for defendant.

"3. The court erred in giving the five instructions, and each of them, for the plaintiff.

"4. The court erred in refusing to give instructions 2, 3, 12, 13, 14 and 15 asked by the defendant."

The defendant excepted also, to the rulings of the court in giving five instructions prayed for by the plaintiff as follows:

PLAINTIFF'S INSTRUCTION NO. 1.

"If the jury find from the evidence that at the time the policy in suit was executed N. B. Coleman was the agent of the defendant and employed his son, R. A. Coleman, in his office to aid him in the discharge of his duties as such agent, and that the said R. A. Coleman at the instance of said N. B. Coleman examined the property insured before said insurance was taken, wrote out the policy in suit and signed and countersigned the same for the said N. B. Coleman by his business name of N. B. Coleman & Co., received the cash premium that was paid and the note given for the balance of the premium and transacted the whole business, so far as the defendant is concerned, in taking and completing said insurance, and if the jury further find from the evidence that said R. A. Coleman knew when transacting said business that the property insured belonged to Mrs. Sarah E. Deitz, the wife of the plaintiff; that he had been so told before writing up said policy by both Mr. and Mrs. Deitz,

and that both Mr. and Mrs. Deitz relied upon him as acting for the defendant to issue a good and valid policy of insurance upon said property; that he knew at the time they so relied upon him, and he intended to issue the same in the name of Mrs. Sarah E. Dietz, but by mistake on his part issued the same in the name of Mr. Deitz, then such mistake of the said R. A. Coleman does not vitiate said policy nor affect the plaintiff's right to recover in this action."

### PLAINTIFF'S INSTRUCTION NO. 2.

"If the jury find from the evidence that the defendant after being notified of the burning of the premises insured, sent its adjuster to settle the loss, and said adjuster after an examination of the facts and circumstances attending the burning, notified the plaintiff that the defendant was not liable and would not settle the loss, such notification was a waiver of the proof of loss mentioned by the policy on the part of the defendant, and the failure of the plaintiff to provide such proof is no defence to this action."

### PLAINTIFF'S INSTRUCTION NO. 3.

"If the jury find from the evidence that the plaintiff furnished the defendant with a proof of loss, although defective, and not such as is required by the policy sued on, and if they further find that the defendant never returned such proof to the plaintiff nor complained of it as being defective, then the defendant waived all defects in said proof and can not set up the same in defence to this action."

### PLAINTIFF'S INSTRUCTION NO. 4.

"If the jury find from the evidence that the defendant upon being notified of the destruction of the property insured, sent its adjuster to settle the loss some three weeks after the fire, and the said adjuster after the examination of the facts and circumstances attending the burning, by his acts and declarations gave the plaintiff to understand, and they were such as would give any reasonable and sensible person to understand, that the loss would not be settled without a suit, and that it would not avail him to furnish such proof of loss as is required by the policy, then such proof of loss was waived by defendant and the failure to furnish it is no defence to this action."

## PLAINTIFF'S INSTRUCTION NO. 5.

"If the jury find from the evidence that the defendant, at the time it issued the policy in suit, was fully and honestly advised of all the facts attending the ownership of the property insured, and that it was left with the defendant, through its agents, with such knowledge of all the facts, to issue a valid and legal policy upon said property, and the said policy, by mistake and error of such agent, or his clerk or employe, was issued in the name of John K. Deitz when it should have been issued in the name of Mrs. Sarah E. Deitz, then such mistake does not vitiate said policy nor affect the right of the plaintiff to recover in this suit."

The defendant also objected to the action of the court in refusing the instructions of the defendant marked respectively 2, 3, 12, 13, 14 and 15. In order to understand the scope of the defendant's theory of the case, and with a view to a better understanding of the question involved in the refused instructions, *all* of the defendant's instructions, as well those given as those refused, are here inserted, as follows :

## INSTRUCTIONS FOR DEFENDANT.

"JOHN K. DEITZ, *for &c.*,  
       *vs.*        } *In Assumpsit.*  
PROV. WASH. INS. CO.

"1. If the jury believe from the evidence that the policy in this case was issued without any mutual mistake between the parties, or that the defendant was not instructed by the plaintiff to write the policy in the name of his wife, S. E. Deitz, and the said defendant by mistake failed to do so, then they shall find for the defendants.

"2. That the jury must be satisfied from the evidence that the plaintiff, John K. Deitz, represented himself to be acting for and as the agent of his wife, Sarah E. Deitz, at the time the policy was issued. or the insurance contracted for, and that he also notified the defendant that all the property mentioned in said policy belonged to her, the said Sarah E. Deitz, and that the plaintiff, as such agent, directed the defendant to make out the policy accordingly, and that the said defendant, by mistake or oversight, made out the said policy, after said instructions had been given, in the name of the plaintiff, and that neither the plaintiff nor Sarah E.

Deitz discovered the alleged error until after the fire, before they can find for the plaintiff.

(Rejected.)

"3. The jury are further instructed that any notice or knowledge of facts to a party that is the agent of the defendant to bind or affect the defendant must be such as the said party acquired in his capacity as agent; that mere rumors or matters coming to his knowledge in his individual capacity are not binding upon the principal.

(Rejected.)

"4. If the jury believe from the evidence that any notice or knowledge of facts claimed· by the plaintiff to have been brought home to the defendant through any agent of defendant was such notice or knowledge of said fact as was acquired by such agent while he was in some other business at another time and not while he was acting for the defendant as its agent, then such notice or knowledge of facts will not be notice to the defendant, and the defendant will not be bound thereby.

"5. The jury are instructed that the terms, provisions and conditions of the policy sued upon are binding and obligatory upon the assured and insurer, and the rights of the parties must stand upon the said contract, and that any violations of the terms and conditions thereof by the assured releases the defendant unless waived by defendant.

"6, If the jury believe from the evidence that John K. Deitz or Sarah E. Deitz have made any fraudulent or false statements with the intention of defrauding the defendant, as to the cause of the fire, or as to the title or ownership of the property insured, or as to the amount or value of the property that was destroyed by the fire, the recovery for which this suit was brought, they should find for the defendant.

"7. If the jury believe from the evidence that the plaintiff has violated any of the provisions of section III of the policy, and has made any attempt to defraud the defendant by false swearing or otherwise, then and in every such case the policy shall be held void and you shall find for the defendant.

"8. If the jury believe from the evidence that John K. Deitz or Sarah E. Deitz intentionally and fraudulently burned, or permitted the property insured, or any part thereof, to be burned, you shall find for the defendant.

"9. And the jury are instructed that upon the issue whether the plaintiff fraudulently and intentionally burned, or permitted the property insured to be burned, a preponderance of the evidence to that effect is sufficient and need not be proven beyond a reasonable doubt that it was so fired.

"10. If the jury believe from the evidence that the plain-tiff has failed to comply with the terms of the policy required by section VI thereof in failing to furnish a proof of loss, *etc.*, they shall find for the defendant, unless they are also satisfied that the defendant waived the said requirement.

"11. The jury are further instructed that a waiver to be operative must be founded on a valuable consideration, or must be such as to estop the party from insisting on the contract or forfeiture of the condition, and a waiver does not exist when the party is given to understand that he does not waive any rights incident to the matter against which the estoppel is set up.

"12. The jury are instructed, if they believe from the evidence that on or about the fifteenth or twentieth, or between the latter date and the first day of September, 1886, that Robert Coleman was a clerk in his father's office, and that his father N. B. Coleman, was the agent of the Queen Insurance Company and sent his son, the said Robert A. Coleman, to examine the property, the loss for which is sued for in this action, with a view to its insurance, and that said R. A. Coleman then knew that the ownership of the property was in Mrs. Sarah E. Deitz, the wife of John K. Deitz, and that John K. Deitz, on or about the 15th day of October, 1886, came to the office of the said N. B. Coleman, the said agent of the Queen Insurance Company, and applied to him for insurance on said property, and that N. B. Coleman, the said agent, was not then informed by the said John K. Deitz that he was the agent of his wife, the said Sarah E. Deitz, and that his said wife was then the owner of said property, and that he desired a policy in her name, and that at that time N. B. Coleman did not know that the property at that time was owned by Sarah E. Deitz, and that the property was insured as the property of John K. Deitz; that the said Deitz himself then paid the cash payment and gave his individual note for the residue of the premium, and

that the said Queen Insurance Company required its agent, N. B. Coleman, to cancel said policy, which was done on the 2d day of December, 1886; and if they further believe from the evidence that on the same day a new policy was written in the Providence Washington Insurance Company, the defendant, by said agent, N. B. Coleman by his clerk, R. A. Coleman, without any knowledge at that time that the property was owned by Sarah E. Deitz, and that no representations were made by said Deitz or his wife to said agent that Sarah E. Deitz was then the owner of said property, then the jury must find for the defendant.

(Rejected.)

"13. The jury is instructed that if they believe from the evidence that Samuel Gillespie was the agent of the defendant company and was informed that the property was owned by Sarah E. Deitz, the wife of John K. Deitz, and that the policy was issued to John K. Deitz, and that when so informed he declared that Deitz had lost no property and the company was not liable under the policy, and if the jury further believe that in a few minutes thereafter in the same conversation that the said Samuel Gillespie, as such agent, read to said Deitz and his counsel, S. D. Littlepage, and then handed to the said John K. Deitz the following writing—

'CHARLESTON, W. VA., May 5th, 1887.

'Upon examination of the premises and circumstances pertaining to your pretended loss under policy No. 1022445 in the Providence Washington Ins. Co. of Providence, R. I., without either admitting or denying liability, we decline to further look into matter.

'SAM'L GILLESPIE,

'S. A. for P. W. Ins. Co,

That such declaration so previously made during such conversation was not under the circumstances thus appearing sufficient to constitute a waiver of the proof of loss required by the terms of the said policy of insurance.

(Rejected.)

"14. The jury is instructed that the defendant company is not responsible for the acts and declarations of persons not its agents, and if the jury believe from the evidence that Robert A. Coleman was not the agent of the defendant com-

pany at the time the policy of insurance issued by the defendant on the 2d day of December, 1886, and that N. B. Coleman was at that time agent of the company and the said Robert A. Coleman was a clerk in the office, and if they further believe from the evidence that John K. Deitz made application to said N. B. Coleman for said policy of insurance and did not disclose the fact that the property which he desired insured was the property of his wife, and the said agent, N. B. Coleman, had no knowledge that said property was owned by the wife of said John K. Deitz, the plaintiff can not recover in this action, although the jury may further believe that R. A. Coleman, clerk of the agent of the defendant, knew that said property so insured was owned by said Sarah E. Deitz.

(Rejected.)

"15. If the jury believe from the evidence that on the 5th day of May, 1887, John K. Deitz made oath before C. J. Switzer, a notary public for Kanawha county, that he, the said John K. Deitz, was the owner of all the personal property destroyed by fire on the 9th day of April, 1887, and the loss for which is sued for in this action, and if the jury shall further believe that the said John K. Deitz afterwards, to wit, on the 31st day of December, 1887, and *after the action was brought*, made oath before E. B. Knight, a notary public in and for Kanawha county, that said personal property so destroyed in said fire was then owned by Sarah E. Deitz, the wife of said plaintiff, and if the jury further believe that either of said affidavits were made with intent to defraud the defendant company, then they shall find for the defendant."

(Rejected.)

*O. Johnson* and *W. S. Laidley* for plaintiff in error.

*S. D. Littlepage* and *Knight & Couch* for defendant in error.

LUCAS, JUDGE:

The first error assigned by the defendants, as appears by the petition, is the refusal of the court to permit certain questions to be propounded to the plaintiff, John K. Deitz, as follows:

1. " Had you license to sell liquors at the time the fire occurred ? "

2. " Have you been frequently indicted for selling liquors at that saloon contrary to law?"

3. " Did you not tell Geo. Pfeiffer that you were getting too old to work in the shop and make a living, and were it not for selling beer, *etc.*, with or without license, that you could not get a living?"

The policy itself states, on its face, that the first floor of the two-story, frame, shingle roof building insured was occupied " as a *saloon.*"    The question, obviously, therefore, was not intended to throw light on the character of the risk, or upon any other issue legitimately involved.    The object, so far as it can be conjectured from the obvious effect of the questions, was to prejudice the minds of the jury against the witness, and the first two questions were properly ruled out by the court.    The third question was liable to the same objection, and to the further objection of introducing into the case the circumstances, or indigence of the plaintiff, an inquiry too remote from any issue involved to be the occasion of any relevant or proper inference by the jury, as was decided in reference to a similar question in *Campbell* v. *Lynn & Co.*, 7 W. Va., 665.    In that case, the defendant offered to give evidence to the jury—" That the plaintiff was, during said three years, and ever since has been, *in very poor, and very needy circumstances, pecuniarily,*" and this Court held that it was properly ruled out.

What has been said disposes, likewise, of the six questions propounded to George Pfeiffer, and the exception based upon the ruling of the court in excluding them.    They related entirely to the plaintiff's selling whiskey, and being in poor circumstances.    I may remark that the defendant did succeed in getting in the evidence, through the witness Rutledge, that the plaintiff had been indicted for selling spirituous liquors, and the only remaining matter of ultimate exclusion in the questions above referred to was as to the *indigence* of the plaintiff, and I can not think it a legitimate inference that a man has been guilty of arson, because he is poor.

The other interrogatories excluded were those propounded to Mary Belle Lane, who testified that she worked for Mrs. Deitz, both before and since the fire, that the last time she

was in the house before the fire was in the spring of 1886. She was then asked, *" What was in the house at that time, in the way of beds, furniture &c?"*

I can not see any pertinency in this question, *standing alone*, unless it was intended to affect the *valuation* of the personalty in the dwelling-house insured. For this purpose, looking to the facts that this was not at or about the time of insurance, but nearly *six months before,* and that the clerk of the agent had himself, according to his testimony, inspected the personalty at the time and inserted its value in the policy, I think the question was properly overruled. If it was intended to connect it, and follow it up by further evidence, which would render it proper, the defendant, on the responsibility of counsel, should have so stated to the court, and what the further evidence was expected in substance to be.

The same may be said of the succeeding question, *" What furniture was in the new house built after the fire?"* This question, standing isolated as it does, had no possible bearing on the case; had counsel stated that they expected to follow it up by further evidence on the part of this witness, or some other, that the furniture in the new house was identical with that which the plaintiff had sworn was burned, that might have made it relevant, but in the absence of any such intimation, the court did not err in excluding it.

These were all the questions excluded; and I think there was no error.

The second assignment is as follows : The Court erred in refusing to set aside the verdict and grant a new trial, because of the rejection of proper evidence and the giving of improper instructions for plaintiff and refusing proper instructions for defendant.

This assignment is supplemented by the brief of counsel, in which it is further claimed that the evidence was insufficient to warrant the finding of the jury. The bill of exceptions certifies not the facts proved, but the evidence.

In such cases, the rule of this Court, very often announced, is that the judgment will not be reversed, unless by rejecting all the parol evidence of the exceptor which conflicts with that of his adversary, and giving full force and credit to that of the adverse party, the decision of the court below still

appears to be wrong. *Henry* v. *Davis*, 7 W. Va. 715, and many cases since.

In my view of this case, and with the above principle applied to the evidence, the controversy resolves itself into a very narrow compass. It is not whether the plaintiff proved *all the facts* as set out in the statement accompanying his declaration, but whether he proved those averments of his declaration which, if proved, would entitle him to recover, after having giving notice of the same in his statement. The object of this statement prescribed by the act of 1882, chap. 77, as contained in the Code, 1887, page 791, is "to notify the adverse party in effect of the nature of the claim or defence intended to be set up against him;" and if it suffices for that purpose, it can not be adjudged insufficient; see section 66, page 792, *Id.*

In this case, the statement of the plaintiff notifies the defendant, that the agent of the defendant, who drew the policy, made out the same in the name of John K. Deitz, instead of in the name of Sarah E. Deitz, his wife, *"by mistake."*

The question then is whether *this mistake* was sufficiently proved to sustain the verdict.

The plaintiff's chief evidence upon this subject was given by Robert A. Coleman, an employee of the agent, N. B. Coleman, as clerk, and is as follows:

"Mr. Deitz had been talking to me and father about insuring his property. He came up and wanted to be insured. He paid money in part and give his individual note for balance. The policy was written in the Queen Insurance Company. The Queen refused to carry it and it was then written in the Providence Washington Insurance Company. Both policies were written without consultation with Deitz or his wife. At that time I knew the property belonged to Mrs. Deitz. I knew it because I was deputy sheriff. It was my mistake. I wrote the policy. Deitz gave his note and the note was before me when I wrote the policy, and that was the way I happened to get his name in the policy. I did not know it was written in Mr. Deitz's name until after the fire. After Mr. Gillespie, the adjuster, came here I was sick and my father came to my room and asked me if I knew the property belonged to Mrs. Deitz, and I told him I did, and

he asked me why I insured it in the name of J. K. Deitz, and I asked him if I had, and he said, 'yes,' and I told him I had made a mistake then. Both Deitz and his wife told me that she owned the property before the policy was written."

There is no further evidence of the plaintiff tending to weaken this testimony, and we have seen, any conflicting testimony of the defendant must be rejected. Here, then, is a case of *mere clerical misprision*, on the part of a clerk who, while intending to write one name, writes a different one *by mistake*—by substitution of what happened to be before his eyes, for that which was in his mind—the committing to the paper not of the writer's design, but of something different, as the result of an absent mind, or a lapsing pen.

This view of the testimony, which is obviously the correct one, and the one which the jury took, makes the question turn, not so much on the *knowledge* of the clerk, as on his *acts*—what did he *intend* to write, as compared with what was actually written? On this subject, the clerk says—"it was my *mistake*—I wrote the policy—Deitz gave his note, and the note was before me when I wrote the policy, and *that* was the way, I *happened* to get *his* name in the policy"—(instead of the name of Mrs. Deitz.) No court of equity would hesitate to correct an error of the scrivener, thus clearly established, whether in a deed, or parol contract. No court of record would hesitate to correct a clerical misprision in its own records, if the mistake were thus clearly established.

*Blessing's Ad'mr* v. *Beatty*, 1 Rob. R. 287; in *Alexander & Co.* v. *Newton &c.*, 2 Gratt. 266, "a mere mistake of the draftsman," in drawing a deed was corrected; in *Peyton* v. *Harman*, 22 Gratt. 266, the words "*to be paid*" having been accidentally omitted by the penman, were supplied in a court of law.

So in our own Court, it is said, in *Troll &c.* v. *Carter &c.*, 15 W. Va. 567, "a court of equity will correct the mistakes of a scrivener in drawing a deed;" see also *Henly* v. *Menefee*, 10 W. Va. 771.

In this very case, when before this Court, at a former term, it was held that—"parol evidence is competent to prove that the application was filled up by the agent of the com-

pany, and that the facts were fully and correctly stated to him, but that he, without the knowledge of the insured, misstated them in the application." 31 W. Va. 853; (the word "*application*" should be "*policy*," as will appear by looking at the statement of the case, *Id.* 852–53.) If the defendant company had repudiated the contract altogether, on the ground that their agent N. B. Coleman had nothing to do with making it, and had not signed the policy, the case would be different; but when the company admits the contract, and rests its defence upon the more clerical blunder of the "amanuensis" (to use the phrase of its counsel) of their agent, it stands upon a position utterly untenable, either in a court of law, or equity.

I come, finally, to consider the instructions. And first, those given for the plaintiff, five in number. In their brief, counsel for the appellant direct their attention chiefly to the 1st instruction, and the 5th. The 1st will be found on page 7 *supra.* The objection urged against it is that it assumes that there was evidence tending to prove certain facts when in fact there was none, and such facts were not pretended to exist. For instance, it says that if they find that Robert, at the instance of his father, wrote out the policy in suit, signed and countersigned the same for his father in his business name, received the cash and the note for the balance and transacted the whole business, so far as the defendant was concerned, in taking and completing the insurance, *etc.*, then the plaintiff's right to recover is not affected.

The instruction is certainly in one or two of its hypothesis, liable to the objection urged, *viz:* that there was no direct evidence tending to show the particular facts supposed. Robert Coleman does not say he *signed* or *countersigned* the policy; he says "*I wrote the policy*"—perhaps the jury might legitimately infer that this included signature and counter-signature. So in regard to receiving the cash and the note. R. A. Coleman does not say he received the money, or the note: he says—"at the time these policies were written, father was out of health and I was doing most of the work, making daily reports *etc.* Of the business I brought into the office, I received one half the commissions from my father."

"I wrote the policy—the policy in the Queen and in the Prov. Wash. Ins. Co. I wrote the daily report for the case. The policy in the Queen was written about the 15th October, 1886. Deitz came in and said he wanted his property insured, and he paid part cash and gave his sixty day note for the balance. He did not say anything about being agent for his wife. Father was present all the time Deitz was in the office."

There would be no great violence in the inference from this evidence, that the son and not the father received the money; and that the son and clerk did, in fact, transact— according to *his* testimony—substantially—the whole business in taking and completing the insurance. But the material part of this instruction, and that to which the plaintiff in error most seriously objects, is the conclusion, to the following effect—that if the jury find that Robert A. Coleman, the clerk, intended to issue the policy in the name of Mrs. Sarah E. Deitz, but by mistake on his part issued the same in the name of Mr. Deitz, then such mistake of the said Robert Coleman does not vitiate said policy, nor affect the plaintiff's right to recover in this action.

From what has been said above, it is apparent that this is a true statement of the law, as applied to this case, and as decided when the case was here before, and, therefore, I find no error in this instruction. And these remarks apply with equal force to the fifth instruction, which will be found on page 8, *supra.* The defendant's counsel objects particularly to the use of the word "*agents*" in this instruction, as calculated to mislead, and as an assumption that N. B. Coleman was not the *only* agent of the company in this transaction. The force of this objection disappears, when the fact is considered that the policy is signed "N. B. Coleman & Co., *Agents,*" and the policy being before the jury, they could not be misled by language identical with that in the policy itself. Moreover, when it is established and admitted that R. A. Coleman was the *clerk* of the company's agent, then, his own agency to that extent, and for the purpose of writing the policy, is conceded. Upon this subject, Mr. Wood says (See Wood on Ins., sec. 409, p. 686):

"Not only is the insurer responsible for acts of its agents, but also for the acts of its agent's *clerks,* or *any persons,* to

whom he delegates authority to discharge his function, for him. Of course, the act must be done by some person authorized expressly or impliedly by the agent, and under such circumstances that the insurer knew, or ought to have known, that other persons would be employed by, and to act for the agent."

But it would seem almost superfluous to adduce authority to show that a mistake of the agent's clerk, in transcribing a policy, is a mistake of the agent himself, as much so as if done with his own hand.

The plaintiff's other instructions relates to the question of waiver of the proof of loss, by denial of liability, and refusal to pay. In *Shephard's Adm'r* v. *Peabody Ins. Co.*, 21 W. Va. 368, syl. 14, it was decided by this Court that "*A denial by an insurance company of its liability*, on other grounds, before any preliminary proofs are made, and before the time within which such proofs are to be made by the terms of the policy, is in law a waiver of the conditions of a policy requiring such proofs." The instruction to which this point in the syllabus applied, and in which the court found no error, used this language, "if the defendant *declined to pay* the said loss, on other grounds than the failure of the plaintiff to furnish the said proofs."

It will thus be seen that this Court does not seem to have been able, at that time, to draw the nice distinction which the adjuster of the company undertook to establish, between a *refusal to pay*, and a *denial of liability.*

No doubt the jury, very properly, considered the ingeniously worded notice which he gave, as follows:

"We don't intend to look further into the matter, and we don't deny our liability, nor do we admit it;"—much more creditable to his ingenuity than to his frankness or candor.

I think this notice of itself would bring the case within the rule of *waiver*, laid down in *Shephard* v. *Peabody Ins. Co.*, above quoted, and that there was no error in granting the instructions prayed for by the plaintiff.

I come now to consider those instructions of the defendant which were refused, being those marked respectively 2, 3, 12, 13, 14 and 15 (pp. 533, 536 *supra*).

The second instruction prayed by the defendant sets out all

the facts which the plaintiff embodied in his "statement," and instructs the jury that unless they find all these facts to be proved by the evidence, they can not find for the plaintiff. Now, as I have said before, it was not necessary to prove all the circumstances detailed in the "statement" as facts, but only so much thereof as was necessary to support the declaration, and authorize a verdict.

If the clerk knew to whom the property belonged, and it was left to him to write out the policy, and he, while intending to write the name of the true owner, wrote that of her husband, by a clerical mistake, then, the plaintiff need prove nothing more in regard to ownership, to entitle him to recover. For this reason, I think the second instruction was properly rejected. Instruction No. 3, which was refused, must be read in connection with the fourth, which was granted. By comparing the two, it is manifest that the court rejected the third, because of its attempt to draw a distinction between what a man knows "in his individual capacity," and what he knows, in some other capacity—a distinction which, if it exists, is of too refined and metaphysical a character to be readily apprehended by the average juryman. I am satisfied, (without conceding it to be a correct statement of the law) that instruction No. 4 embraced all that the defendant could ask upon the question of the agent's knowledge, and his mode of acquiring it, and that there was no error in refusing the third instruction asked by defendant.

The other instructions of defendant were given, as asked, consecutively down to the 12th, and refused consecutively from the 12th to the 15th inclusive.

The 12th sets out, in hypothesis, the defence of the defendant, so far as relates to the ownership of the property, and the misdescription thereof, in the policy. It requires the jury to find for the defendant, although they should believe that the agent sent his clerk to examine the property, and said clerk there learned the correct ownership, and was intent upon so writing it in the policy, when by clerical misprision he wrote another name in *lieu* of what he intended to write. To have given this instruction would have withdrawn from the jury the most material facts involved in the controversy, and it was properly refused. The thirteenth instruction relates to the

waiver of the proof of loss, and could not have been given without ignoring and contravening the principle laid down in *Shephard* v. *Peabody*, as above quoted, and relied upon.

Defendant's 14th instruction is erroneous, because it limits the power of the company's agent to such an extent as would be unfair to the public, and disastrous to the companies themselves. Insurance agents are not bound to attend to all the details of their business in person, and if they could not authorize their clerks or other assistants, to carry on the business, and renew policies, or contract in reference to them, they would frequently, in case of sickness or absence, have to close their offices altogether.

The case of *Bodine* v. *Exchange Ins. Co.*, 51 N. Y. 566, (10 Am. Rep. 566) was a case exactly similar to this. The syllabus in that case is as follows:

"An insurance agent can authorize his clerk to contract for risks, to deliver policies, to collect premiums, and to take in payment thereof cash or securities, and to give credit for premiums, or to demand cash. And the act of the clerk, in all such cases, is the act of the agent, and binds the company as effectually as if done by the agent in person." See Story on Agency, § 14.

In the opinion of the court, we find the following passage, which, in my opinion, is a correct statement of the law of this case:

"But conceding this, it is claimed, on the part of the appellant, that his son, Charles Whelp, had no authority to waive the prepayment of the premium, so as to bind the company. Charles had been the clerk and assistant of his father for three or four years. He had procured policies and renewal certificates from the company and frequently delivered them to the persons insured, waiving prepayment of the premiums. All this he did with the knowledge and assent of his father, and hence we must infer that he was authorized by his father to do it. The agency of John Whelp was not such as to require his personal attention to all the details of the business intrusted to him. We know, according to the ordinary course of business, that insurance-agents frequently have clerks to assist them; and that they could not transact their business if obliged to attend to all the details in person, and

these clerks can bind their principals, in any of the business which they are authorized to transact. An insurance-agent can authorize his clerk to contract for risks, to deliver policies, to collect premiums, and to take payment of premiums in cash or securities, and to give credit for premiums, or to demand cash; and the act of the clerk in all such cases is the act of the agent, and binds the company just as effectually as if it were done by the agent in person. The maxim of *delegatus non potest delegare* does not apply in such a case. Story on Agency, § 14."

The 15th instruction instructs the jury to find for the defendant, in case they find that John K. Deitz, on the 5th of May, 1887, swore that he owned the personal property burned, and on the 31st day of December, 1887, *after the action was brought,* swore that the same property belonged to his wife, and that *either* of said affidavits were made with intent to defraud the company.

Nothing is said in this instruction about the *agency* of John K. Deitz, though that, perhaps, would sufficiently appear from the record. However, the rights of the parties must be determined as they existed when the suit was commenced, and no affidavit of John K. Deitz made after that time could affect the rights of the owner of the property. After the company has denied its liability under the policy, they could not take advantage of the breach of any of the conditions thereof made after action commenced. No false swearing after the suit was instituted could change the rights of the parties as they stood when the writ issued. Therefore, I think there was no error in refusing this instruction.

Upon the whole, I can find no material error in the record of which the plaintiff in error can complain, and am, therefore, of opinion that the judgment of the Circuit Court should be affirmed, and that the defendant in error should recover his costs in this Court, in this behalf expended.

AFFIRMED.