C. A. VERNON and Marianne Vernon,
Appellants,

v.

AETNA INSURANCE COMPANY,
Appellee.

No. 18840.

United States Court of Appeals
Fifth Circuit.

March 30, 1962.

Rehearing Denied May 11, 1962.

George E. Cire, James J. Hippard, Percy Foreman, Houston, Tex., for plaintiffs-appellants. Foreman & Walsh, Cire & Jamail, Houston, Tex., of counsel.

David Bland, Houston, Tex., for appellee. Barrow, Bland & Rehmet, Houston, Tex., of counsel.

Before TUTTLE, Chief Judge, and HUTCHESON and RIVES, Circuit Judges.

HUTCHESON, Circuit Judge.

The case is before us upon appeal from a summary judgment rendered in behalf of the insurer, appellee here, in an action by the insured on a personal property floater policy of insurance. As a statement of the facts of the case will show, this is another of those all too numerous instances of the mis-use of the summary judgment procedure to cut a trial short; as so often before, it has served only to prove that short-cutting of trials is not an end, and that in the conduct of trials, as in other endeavors, it is quite often true that the longest way around is the shortest way through.[1]

Among the articles of property covered by the policy were certain scheduled pieces of jewelry of the value of $49,150.00. Appellants stated in their original petition that on or about January 17, 1960, some of the jewelry, valued at $27,700.00, was taken from their home under circumstances constituting burglary or theft. Aetna, the insurer, was made aware somehow,[2] that the insured claimed the right to recovery for a covered loss, and denied liability because according to appellants' petition, of Aetna's stated belief "that plaintiffs were liars and frauds". Appellants then instituted suit in a district court of Texas for the amount of the alleged loss and punitive damages. The suit was removed on petition of the insurer to the United States District Court for the Southern District of Texas.

On May 20, 1960, before Aetna had filed its answer in the suit, Marianne Vernon, one of the plaintiffs-appellants and owner of most of the jewelry, subscribed and swore to a statement in which she declared that the burglary or theft of jewelry which was the basis of her claim against Aetna was in fact feigned by her father, C. A. Vernon, the other appellant herein, pursuant to a plan for obtaining a recovery on the policy, to which she, her mother, and her father were all parties.

On May 23, 1960, Aetna filed its answer, relying affirmatively on the defense that a clause in the policy provided:

"This policy shall be void if the assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the assured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

and that the action of C. A. Vernon, Marianne Vernon, and Mrs. C. A. Vernon, as described in Marianne Vernon's statement of May 20, 1960, was a clear violation of this clause, voiding the contract. In addition, Aetna filed a counterclaim for actual and punitive damages.

---

1. Gray Tool Co. v. Humble Oil & Refining Co., 5 Cir., 186 F.2d 365. Cf. Colby v. Klune, 2 Cir., 178 F.2d 872; Doehler Metal Furn. Co. v. United States, 149 F.2d 130 at 135; Kennedy v. Silas Mason, 334 U.S. 249 at pp. 256–257, 68 S.Ct. 1031, 92 L.Ed. 1347; Sartor v. Ark. Natural Gas Corp., 321 U.S. 620 at p. 627, 64 S.Ct. 724, 88 L.Ed. 967; Peckham v. Ronrico, 1 Cir., 171 F.2d 653 at p. 657; Whitaker v. Coleman, 5 Cir., 115 F.2d 305.

2. Appellants claim that the proofs of loss required by the policy were filed within the time limits therefor; appellee claims that they were not. The truth of the matter is not in issue on this appeal.

Thereafter, on September 8, 1960, Aetna moved for partial summary judgment, with Marianne Vernon's affidavit of May 20, 1960 attached, on the ground that the Vernon's fraud vitiated the insurance and released the liability of the insurer as a matter of law. On October 17, 1960, no controverting affidavits having been filed, the motion was set for hearing on October 31st. Prior to the date set for hearing, however, on October 28th, C. A. Vernon, his wife, and Marianne Vernon all executed affidavits repudiating Marianne's affidavit and denying knowledge of, or complicity in, the theft of the insured jewelry as sworn to by her. In repudiating her statement of May 20, 1960, Marianne Vernon stated:

"I have read the statement made and executed by me on May 20, 1960. The representations in that statement regarding the theft of jewelry from our house are not true. I had no prior knowledge of the theft, was not in anyway implicated, and I do not know the whereabouts of the jewelry.

"I was induced to make and sign this statement out of fear for the liberty of Mark Tenalio." [This man had been employed by investigators representing the insurer to make inquiries in Bryan, Texas, where the Vernons lived.] "At the time I made the statement I was deeply in love with Mark Tenalio. He had asked me to marry him and I was pregnant by him. He told me that if I did not 'help to clear him' he would go to the penitentiary for this theft. I did not want the father of my unborn child to be a convict, so, together we invented this story about my father and mother. It is all false." [3]

On October 31, 1960, a hearing on Aetna's partial motion for summary judgment was held. At this time the court had before it all of the affidavits referred to above. After stating that the affidavits raised material issues of fact, and announcing that the motion for summary judgment would be overruled, the court granted Aetna leave to file an amended motion. The amended motion abandoned the motion for partial summary judgment made in connection with the Aetna's counter claim, set up the policy provision voiding the policy in the event of fraud, attempted fraud, or false swearing by the insured, and the two affidavits executed by Marianne Vernon, and urged that since one of the affidavits must necessarily be false, the policy provision was violated and the policy voided.

Finding that the two affiadavits given by Marianne Vernon established fraud, attempted fraud, false swearing, concealment and misrepresentation, as a matter of law, the district court rendered judgment for Aetna. The published opinion may be found at 189 F.Supp. 233.

Appellee was entitled to judgment on its motion only if there were no genuine

3. Subsequent to the rendition of judgment in this case, Marianne Vernon was charged by complaint with perjury in connection with her statement of October 28, 1960. Upon a hearing before the United States Commissioner, it appeared that the notary who signed Marianne Vernon's statement in his official capacity had no independent recollection of the statement, and that while he did not usually require an affiant to raise his or her hand and swear, it was his custom to determine if the affiant has read the statement and to ask the affiant if the statement is true. The complaint was dismissed on motion of the United States.

As to appellee's contention that Marianne Vernon's second statement did not constitute an affidavit, and was, therefore, insufficient to raise issues of fact in defense of a motion for summary judgment, if it be assumed, without deciding, that a statement not made under the pains and penalties of perjury under Texas law would be inadequate to raise issues of fact in defense of a motion for summary judgment, this would not avail appellee, for the showing made before the Commissioner in the case at bar was not, in our opinion, sufficient to impair the technical validity of the statement as an affidavit. See Vaughan v. State, 146 Tex.Cr.R. 586, 177 S.W.2d 59 (1943) reh. denied.

issues as to any material fact and if the uncontroverted facts established its right to judgment as a matter of law. Fed.R.Civ.P. 56(c), 28 U.S.C.A. State law is controlling, and the question we must decide is whether, under the law of Texas a provision in a policy of insurance purporting to void the policy in the event of fraud, attempted fraud, or false swearing by the insured may be invoked as the basis for a summary judgment when the insured executes two affidavits of the character of those involved in the instant case by taking one or both as false. Aetna urges both that the policy provision in question should be construed to require that, because of the making of two affidavits, the policy be voided, and that this result is not contrary to Texas law. We shall examine both of these propositions.

The Texas Insurance Code (Acts 1951, 52d Leg. ch. 491), Art. 21.16, V.A.T.S., provides that any provision in a policy which provides that untrue or false answers or statements made in the application or contract shall render the policy void shall not constitute a defense to a suit on the policy unless it is shown upon trial that the matter or thing represented was material to the risk or actually contributed to the contingency or event upon which the policy became payable. Materiality is a question of fact. Article 21.19 provides that a provision voiding a policy for false statements made in the proofs of loss shall be ineffective as a defense unless it is shown upon trial that the false statement was fraudulently made, misrepresented a fact material to the liability of the insurer, and that the insurer was thereby misled and caused to waive or lose some valid defense to the policy. It will be observed that the foregoing statutory provisions apply by their terms only to false statements made in the application for the policy or in the proofs of loss, respectively. So far as we have been able to determine, no Texas statute or decision deals directly with the question of avoidance of a policy because of false statements made subsequent to the institution of suit upon the

policy, after denial of liability by the insurer. The statutory provisions referred to above do, however, bespeak the public policy of Texas in insurance matters. Part of a comprehensive Insurance Code and remedial in nature, they are to be construed liberally to accomplish the legislative purpose, with the evil to be remedied kept clearly in view. Mecca Fire Ins. Co. v. Stricker, 136 S.W. 599 (Civ.App. 1911), no writ history; McPherson v. Camden Fire Ins. Co., 222 S.W. 211 (Tex.Com.App.1920).

The policy plainly revealed by these provisions is one flatly opposed to the use of forfeiture clauses to avoid the obligations of insurance contracts solely upon a showing that the insured has made, at any time, a false statement with respect to the insurance or the subject thereof. Under the statutory scheme, only those falsehoods which are material to the risk, if made before the loss occurs, and only those which are material, fraudulently made, and which mislead the insurer and cause it to lose some valid defense, if made after the loss occurs, may be made the basis for voiding a policy pursuant to a forfeiture clause.

To be sure, the Legislature, in expressing its policy, referred specifically to only two kinds of false statements, those in the application and those in the proofs of loss. The reason for this is apparent. These are the only kinds of statements, in the vast majority of cases, which the insured will ever make to the insurer, and are by far the most important which can be made, for the former serves to provide the information upon which the insurer determines to accept or refuse the risk, and the latter notifies the insurer of the occurrence of the risk insured against and the circumstances surrounding it. The Legislature having specifically prohibited the forfeiture of policies because of falsity (unless the insurer can demonstrate existence of the statutory prerequisites to voiding the policy) in even those communications with the insurer upon which the latter might ordinarily be expected to rely most, it follows that false

statements of lesser consequence, such as the affidavits in this case, though not specified in the statute are nonetheless included within the same prohibition.

Chaachou v. American Central Insurance Company, 241 F.2d 889 (5th Cir., 1957) is not authority to the contrary. Explicitly predicated upon "the absence of statute, E. g., Art. 21.19, Texas Insurance Code, V.A.T.S.", that case was decided under the law of Florida. It dealt with false statements made in the proofs of loss and was a case in which fact questions regarding the statements had been submitted to a jury, rather than, as here, taken as undisputed.

■■ We turn next to examination of the contract provision upon which Aetna relies in its effort to avoid the policy. In doing so, we are not unmindful of the principle that policies are to be construed most strongly against the insurer and so as to avoid a forfeiture, if possible. Burns v. American National Ins. Co., 280 S.W. 762 (Tex.Com.App.1926); A. J. Kelley v. American Ins. Co., 316 S.W.2d 452, aff'd 325 S.W.2d 370, reh. den. The plain meaning of the words of the provision taken in their broadest possible scope, is that any falsely sworn statement by the insured, made at *any* time, under *any* circumstances, to *any* person or entity is sufficient to void the policy. While the provision was obviously inserted for the sole benefit of the insurer, who now naturally contends for a literal interpretation, it must be remembered that it is a contract which we are here considering, not a fiat. We are unconvinced that any insured would agree to the construction contended for by Aetna. Under that construction, the slightest falsehood by the insured, even in a sworn pleading or upon the witness stand in a court of law, no matter how immaterial, no matter how innocent the insured, no matter how well-known the truth to the insurer, so long as it related to the insurance or the subject thereof, would summarily void the policy as a matter of law. It is absurd to suggest that any insured would knowingly assent to such a provision. Yet the false statements here complained of were made, not to the insurer, as it appears, but for the purposes of this litigation, almost as if the insured had indeed pleaded them or made them upon the witness stand as in the hypothetical situation just suggested. We find quite convincing the construction placed on such contractual provisions by authorities which have held that such provisions do not extend to false swearing after suit is instituted on the policy. See American Paint Service v. Home Insurance Co. of New York, 246 F.2d 91, 64 A.L.R.2d 957 (3rd Cir., 1957); Deitz v. Providence Washington Ins. Co., 33 W.Va. 526, 11 S.E. 50 (1890).

Moreover, as we have indicated, construed as the appellee urges, the provision in question would be invalid and void as contrary to the public policy of Texas.

We conclude that the provision does not extend to every false swearing, but only to those within the scope allowed by the public policy of the state. It does not extend to the affiadvits made by Marianne Vernon after denial of liability by Aetna and after action on the policy had commenced.

It is apparent from what we have said, that the mere fact of making inconsistent statements does not establish fraud or attempted fraud under the policy as a matter of law and that fact questions remain for decision before the insurer may prevail upon those defenses.

The trial court erred in rendering summary judgment. The judgment is therefore REVERSED and the cause is REMANDED for further and not inconsistent proceedings.

TUTTLE, Chief Judge (dissenting).

With deference to the views of my colleagues, I must dissent. I am utterly unable to understand how or why a federal court should attempt, by what appears to me to be judicial fiat, to fashion a public policy for the state of Texas, a state that has never been known to be one that was callous to the interests of policyholders as against the insurers—

that will inevitably invite the worst types of deception and fraud. Moreover, I am unable to distil from the opinion of the majority exactly what the public policy of Texas now is touching on the making of false statements or false swearing if such dishonesty does not occur in connection either with the application for the policy or in the formal proofs of loss.

Here, after the plaintiffs had filed suit on this floater policy seeking a recovery for the alleged loss of jewelry, Marianne Vernon, one of the plaintiffs, alleged to be the owner of $27,000 worth of the jewelry, filed a sworn affidavit to the effect that there had been no theft and that the claim of theft was a trumped-up claim in which she and her parents, the other insureds, had participated. Based on this affidavit the Insurance Company then filed its answer denying liability. Thereafter, attaching this affidavit to its motion, it moved for a summary judgment, to which, at the time, in the light of the pleadings and affidavits, it would clearly be entitled. In response to this motion for summary judgment, however, Marianne swore again, this time saying that what she had previously sworn to was false. She thereupon re-asserted her claim against the Insurance Company. We take it, therefore, that the principal assured, that is the owner of the substantial loss claimed, is a self-confessed perjurer, since in the majority opinion it is stated that Marianne's second affidavit is sufficient to satisfy the Texas requirements of an affidavit. She has sworn that she swore falsely when she told the Company by affidavit that she had "cooked up" the entire story of theft in order to save her boy friend from some unexplained trouble.

The trial judge, himself an experienced Texas judge, held, as I think he was required to do, that either Marianne's false affidavit that there had been no theft was a violation of the warranty against false swearing "before or after the loss" or the subsequent affidavit, in which she undertook to recant the earlier one, was false by the very nature of things, and that this would then be a violation of the warranty against false swearing.

As I understand the majority opinion, it is based on the general proposition that since the Texas statutes have provided that an insurance company may not rely upon untrue or false answers or statements *made in the application or contract* for insurance unless it is shown upon trial that the matter or thing represented was material to the risk or actually contributed to contingency or event upon which the policy became payable, and since it has also enacted a provision depriving an insurance company of a defense based upon a contract provision voiding a policy for false statements *made in proofs of loss* unless it is shown upon trial that the false statement was fraudulently made, misrepresented a fact material to the liability of the insurer, and actually misleading the insurer, these statutory provisions "bespeak the public policy of Texas in insurance matters." The opinion then seems to say that since the plain meaning of the words of the provision taken in their broadest possible scope would avoid the policy in the event of *"any* falsely sworn statement by the insured, made at *any* time, under *any* circumstances, to *any* person or entity" would be an absurd construction, then it follows that this concededly false affidavit touching on the very question as to whether a loss had occurred, an affidavit admittedly knowingly and intentionally made by the assured, cannot be relied upon by the insurance company as a defense to the suit. The opinion does not tell us why. It simply says that, construed in the most literal and broadest possible scope "the provision in question would be invalid and void as contrary to the public policy of Texas."

The opinion then says, "We conclude that the provision does not extend to every false swearing, but only to those within the scope allowed by the public policy of the state. It does not extend to the affidavits made by Marianne Vernon, after denial of liability by Aetna and after action on the policy had commenced." This, it seems to me, is pure

fiating and nothing more. The opinion then concludes with the statement, "It is apparent from what we have said that the mere fact of making inconsistent statements does not establish fraud or attempted fraud under the policy as a matter of law." The fact is that we do not have here "a mere fact of making inconsistent statements"; we have here an admittedly false affidavit, which by its very nature might affect the insurance company's investigation of whether or not an actual loss had occurred and whether or not it would be liable on the policy.

Realizing, out of the deepest respect which I hold for my distinguished colleagues, that I may read something more in the language of the opinion than is intended, I must nevertheless reject as erroneous and, I sincerely believe, as damaging to the entire fabric of the law, the characterizing of this open, blatant, perjury as a "mere fact of making inconsistent statements."

From some place outside the record the majority finds a basis for making the statement that the two kinds of false statements expressly referred to in the Texas statutes, "are the only kinds of statements, in the vast majority of cases, which the insured will ever make to the insurer, and are by far the most important which can be made." The truth is that these statutes do not touch upon false statements that may be made by an insured during the insurance company's investigation of the loss, or the insurance company's investigation as to whether there has been a theft. Although I have no more justification in speculating as to what kind of statements the insured is apt to make than has the majority in its estimate, it would seem to me that in at least an appreciable number of cases false statements impeding a fair investigation of the claimed loss by the company might be not only the largest in number but the most material and that they would also be the kind the legislatures and the courts would be most alert to prevent, and yet the majority opinion now holds that an

agreement by an assured not to make false statements in connection with an investigation of a loss by an insurance company on pain of forfeiture of the policy, is against the public policy of the state of Texas.

I think this Court paid its respects to the kind of reasoning by which such public policy would be established by what we said in the case of Chaachou v. American Central Insurance Company, 5 Cir., 241 F.2d 889, where we said at page 892:

"The contract does not spell out that it is only false swearing, misrepresentation, concealment or fraud which is successful that avoids the policy. Nor is there any reason why any such condition should be read into it. Clearly, in the absence of a statute, the law, which is founded on truth and justice, will not regard it as unsound that a person has lost the benefit of the contract by wilful, immoral, dishonest acts which the contract itself condemns.

"Moreover, if the law out of some misgivings about the forfeitures, were to require that the insurer demonstrate that it had been misled to its prejudice by the fraud, the policy provision would both be virtually worthless and put a premium on dishonest dealings by the assured. For if, by its own investigation, inspired perhaps by suspicions of the assured's efforts to misrepresent, the insurer satisfied itself that a fraud had been attempted and declined to pay, such a rule would mean that the assured's claim would then stand as though no dishonest acts whatsoever had been practiced. The mendacious assured, surveying the possibilities and contemplating prospective tactics and strategy in the handling of his claim, would sense immediately that vis-a-vis himself and the underwriter, there be no risk at all in his deceit. If it worked, he would have his money and, at worst, could be compelled to disgorge only by affirmative suit by the insurer if the fraud

were discovered in time to be legally or practicably effective. If it didn't work—if, before consummation, fraud was detected—he would suffer no disadvantage whatsoever. It would be an everything-to-win, nothing-to-lose proposition.

"Additionally, such a rule would cast the underwriter in a role for which it is unsuited and in a process which the general good, out of long experience, considers best performed by government machinery. Convinced, as here by its own investigation of the claim, of dishonest acts by the assured, it would then have to undertake the talks of segregating truth from untruth, ferreting out the honest from the dishonest, choosing the right from amongst the wrong with all or much of the factual material coming from one now considered to be morally unreliable.

"The public interest is not furthered by these likely consequences of reading into the contractual language this burden nowhere expressed. A judge-made policy which thus gives advantage to dishonesty will retard, not accelerate, the orderly adjustment of insurance losses. If the insurer, from the strong language of the contract interpreted in equally plain terms by the law, is entitled to assume that the assured is dealing honestly and fairly, asserting only that which in good faith is believed to be the substantial truth of the matter, the claim can be handled in a spirit and atmosphere of confidence. If, on the other hand, the insurer must realize that fraud is significant only if it is finally successful, that the slate is wiped clean if its own investigation uncovers the assured's cozening, the setting may then become one of the hostile antagonism, reluctance and apprehension forcing more, not less, litigation."

Although in the Chaachou case this Court was construing the law of Florida, the situation was the same because there is no statute in Florida touching on the matter, nor, as conceded by the majority here, is there any statute of Texas touching this situation.

Moreover, I think the Texas case of Modern Order of Praetorians v. Davidson, Tex.Civ.App., 203 S.W. 379, establishes the law of Texas for the proposition that unless the Texas insurance laws themselves outlaw a defense as being against the public policy of that state, the courts have no power to do so. In that case the insured sought to rely upon the Texas statute above referred to touching upon false representations in an application for insurance. However, the Court of Civil Appeals of Texas decided that the statute applied only to stock companies and not to "fraternal insurance." The opinion of the court said, "In the absence of a statute to the contrary, false representations in an application for insurance, which the applicant warrants to be true, will avoid the policy, without reference to the materiality of such statements." The court said that the failure of the Texas statute to include fraternal insurance as being covered by the stated public policy left the defense open in a suit on a fraternal insurance policy without requiring it to prove the materiality of the false statements made. In the light of such a policy as announced by the Texas courts, it seems that we are going far afield indeed in fashioning a policy, even though not fully articulated in this opinion, to the effect that a provision against false swearing occurring after loss, is void under the public policy of the state of Texas.

I would affirm the order of the trial court dismissing the complaint on summary judgment.