The AETNA CASUALTY & SURETY COMPANY, Plaintiff-Appellant,

v.

Hirschell L. GUYNES and Mable Ann Guynes, Defendants-Appellees.

No. 83–2022

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Sept. 9, 1983.

Joseph F. Nistico, Jr., Houston, Tex., for plaintiff-appellant.

Harry H. Walsh, III, Huntsville, Tex., for defendants-appellees.

Before BROWN, REAVLEY and JOLLY, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

From a judgment for the assureds in a diversity action on a $25,000 home fire insurance policy, the plaintiff-insurer, Aetna Casualty & Surety Company ("Aetna"), appeals the District Court's instructed verdict, denial of a new trial, and final judgment. We affirm.

### Facts

In 1978 the assureds, Hirschell Lee and Mable Ann Guynes, bought a four-room frame house in wooded Onalaska, Texas off of Lake Livingston.[1] In October of the following year, they applied for a $25,000 fire insurance policy on the house with Aetna. Aetna declined to inspect the house and issued the policy after the Guyneses paid the necessary premiums. In the early morning hours of June 7, 1980, the house burned to the ground. By then, Aetna still had not inspected the house.

Aetna suspected the worst. Its investigators eventually concluded that the fire had been intentionally set probably by someone using some type of flammable liquid. Moreover, early on in the investigation, the Guyneses gave wrong accounts of exactly how much they had originally paid for the house and of where Mr. Guynes had been on the night of the fire which they later corrected. Aetna decided not to pay on the policy and filed suit in the Southern District of Texas, seeking declaratory relief from liability on the affirmative defenses of arson and misrepresentation. The Guyneses counter-claimed for the total proceeds of the policy.

At trial, the District Judge instructed a verdict against Aetna on a motion by the Guyneses on the misrepresentation claim, finding that the conflicting statements had not been material to Aetna's liability under the policy. Then, after a two-day trial, the jury found that the Guyneses had not set the fire themselves nor had they caused anyone else to set the fire. The Court entered judgment against Aetna for $25,000, plus interest and costs of the court. Aetna moved for a new trial based on several alleged errors by the Court during trial and was denied.

Aetna appeals the decisions of the District Court in instructing verdict for the Guyneses, in denying Aetna's motion for a new trial, and in granting judgment for the total proceeds of the policy.

### Instructed Verdict Against Aetna

Aetna had asserted that the Gyneses' statements made during the investigation of the loss of the house were willful misrepresentations of material facts or circumstances which, under the Guyneses' fire policy,[2] relieved Aetna of liability. The

---

1. The Guyneses never intended to, and never did, live in the lakeside house, but rather looked on it as a retirement getaway. Their home was in Cleveland, Texas, about an hour drive away.

2. The Guyneses' policy contained an apparently standard clause headed "Concealment, Fraud":

This entire policy shall be void if, whether before or after a loss, the Insured has willful-

Guyneses had said to Aetna's fire investigator shortly after the loss that they had paid $22,000 for their Onalaska house and Mr. Guynes had stated that, on the evening of the fire, he had been at their home in Cleveland alone.[3] At trial, the Guyneses correctly stated that they had paid $10,000 for the house (as the former owner of the house had testified) and Mr. Guynes said that he had been at a campaign victory party on the night of the fire.[4]

At the close of plaintiff's case, counsel for the Guyneses moved for an instructed verdict on both the arson and misrepresentation issues. The Trial Judge denied the motion as to the arson claim but instructed a verdict against Aetna on its defense of material misrepresentation, on the grounds that the misrepresentations were not of facts material to Aetna's liability under the policy nor had they induced Aetna to originally issue the policy.[5]

Looking to Texas Law—which is controlling in this diversity suit—it is clear we would enforce Aetna's misrepresentation

clause absent a contrary State policy or statute. As this Court said in *Chaachou v. American Central Insurance Co.,* 241 F.2d 889, 892 (5th Cir.1957) (footnote omitted), in upholding a similar insurance provision in Florida,

> Clearly, in the absence of a statute, the law, which is founded on truth and justice, will not regard it as unsound that a person has lost the benefit of the contract by wilful, immoral, dishonest acts which the contract itself condemns.

The Guyneses point to Tex.Ins.Code Ann. art. 21.16 (Vernon 1981)[6] as stating the general rule in Texas. Article 21.16, though, is directed to misrepresentations made prior to the issuance of a policy, "in the application for ... or in the contract of insurance." *See, e.g., Robinson v. Reliable Life Insurance Co.,* 554 S.W.2d 231, 234 (Tex.Civ.App.—Dallas), *aff'd,* 569 S.W.2d 28 (Tex.1977). Aetna alleges only that the Guyneses made misrepresentations which "after a loss" void the policy.

---

ly concealed or misrepresented any material fact or circumstance concerning this insurance, or the subject thereof, or the interest of the Insured therein, or in case of any fraud or false swearing by the Insured relating thereto.

3. In statements transcribed by Aetna's investigator two months after the loss and attested to as true and correct, both Guyneses stated that they had paid $22,000 for the house. Mr. Guynes said that they had paid in cash and that he had been, to the best of his memory, at home in Cleveland the night of the fire and did not leave. Mrs. Guynes said that he had been working with her at the election polls that night.

4. At trial, Mrs. Guynes explained their prior conflicting estimates of the cost of their house; "$22,000 is what we said we had in the house all together after we remodeled and furnished and fixed it up. This was our rough guess what we had in it overall cash.... You got me mixed up on what we paid for it and what we had in it." Mr. Guynes also testified that, "The 22,000 is what we had in it, approximately." As to his original statement about where he was on the night of the fire, he admitted, "Well, I didn't remember where I was really at that time when I gave that."

5. In so ruling, the Trial Judge said to Aetna's counsel, "[An inaccurate estimate on the cost of the house] doesn't affect your liability one

way or the other. You owed $25,000 regardless of whether the house was worth 5000 or 50,000, or whether they paid 10,000 or 50. You took premiums on a $25,000 policy.

"Now, if they had lied to you as inducements to have you write the policy, that would be another thing. After the fact, them saying they paid $25,000 didn't affect your liability one bit. It wasn't material....

"Okay, We are just on arson."

6. **Art. 21.16. Misrepresentation by Policyholder**

Any provision in any contract or policy of insurance issued or contracted for in this State which provides that the answers or statements made in the application for such contract or in the contract of insurance, if untrue or false, shall render the contract or policy void or voidable, shall be of no effect, and shall not constitute any defense to any suit brought upon such contract, unless it be shown upon the trial thereof that the matter or thing misrepresented was material to the risk or actually contributed to the contingency or event on which said policy became due and payable, and whether it was material and so contributed in any case shall be a question of fact to be determined by the court or jury trying such case.

■ We may find such a contradictory statute or policy in Tex.Ins.Code Ann. art. 21.19 (Vernon 1981),[7] the consumer-oriented, "anti-technicality" statute directed to forfeiture clauses such as Aetna's here. Aetna argues that "in proofs of loss or of death," *see* note 7, *supra,* precludes misrepresentations made in anything other than such proofs. Thus, they argue, policy-holders giving false statements during an insurance company's investigation of the loss fall outside the protections of Article 21.19, and to avoid liability the company must only satisfy the general requirements that the false statements were "willfully made with respect to a material matter and with the intention of thereby deceiving the insurer." (*citing* 44 Am.Jur.2d Insurance § 1501 (1969)). In light of the available precedent on this question, we must disagree.

*United States Fire Insurance Co. v. Skatell,* 596 S.W.2d 166 (Tex.Civ.App.—Texarkana 1980, writ ref'd n.r.e.), an appeal from an action to collect insurance benefits for certain allegedly stolen pieces of jewelry, is the most recent case that extends Article 21.19 beyond its literal terms. There, the plaintiff had denied having a previous criminal record at an oral examination under oath conducted by the insurance companies during its investigation of the loss. Later, at another oral examination, he admitted a record of several offenses of fraud, hot checks, and theft by false pretenses. The insurance companies denied his claims, contending that the misrepresentation clauses in their policies[8] relieved them of liability. At trial, the jury found specifically that the jewelry had been stolen and that the plaintiff had concealed a material fact. Based on Article 21.19, the Trial Court disregarded the jury's findings of concealment and

rendered judgment in full for the plaintiff. The Court of Civil Appeals affirmed.

Trying to escape the consequences of the statute, the insurance companies argued that a post-loss examination under oath did not come within Article 21.19. Chief Justice Cornelius for the Court held that such an examination, "although not a formal proof of loss, nevertheless is an elaboration upon and partakes of the nature of a proof of loss, and therefore comes within the statute even though not specifically mentioned." *Id.* at 169. Relying on this Court's decision in *Vernon v. Aetna Insurance Co.,* 301 F.2d 86 (5th Cir.), *cert. denied,* 371 U.S. 819, 83 S.Ct. 33, 9 L.Ed.2d 59 (1962), the Court reasoned that,

if false statements in the more formal proof of loss will not void the policy unless they are fraudulent, material and harmful to the insurer, certainly the intent of the statute is that false statements of lesser consequence should not be allowed to void a policy unless they, too, meet such requirements.

*Id.* The District Court's disregard of the jury's finding of concealment was affirmed because there was "no allegation or proof ... that the false statements were fraudulently made, were material to the issue of liability, or caused the insurers to waive or lose any valid defense to the policies." *Id.*

The Court also relied on *Fireman's Fund Insurance Co. v. Reynolds,* 85 S.W.2d 826 (Tex.Civ.App.—Waco 1935, writ ref'd), which held that false statements by an insured, made during a post-loss examination required by the insurance company in connection with proofs of loss, fell within the scope of the predecessor to Article 21.19. There, through Chief Justice Gallagher, the Court stated that,

proofs of loss or death was fraudulently made and misrepresented a fact material to the question of the liability of the insurance company upon the contract of insurance sued on, and that the insurance company was thereby misled and caused to waive or lose some valid defense to the policy.

**7. Art. 21.19. Misrepresenting Loss or Death**
Any provision in any contract or policy of insurance issued or contracted for in this State which provides that the same shall be void or voidable, if any misrepresentations or false statements be made in proofs of loss or of death, as the case may be, shall be of no effect, and shall not constitute any defense to any suit brought upon such contract or policy, unless it be shown upon the trial of such suit that the false statement made in such

**8.** The "Misrepresentation and Fraud" clauses there were essentially the same as Aetna's "Concealment, Fraud" clause here, n.2, *supra.*

"The false statements relied on to work a forfeiture of the rights of the insured under a policy must have been willfully made and must not have resulted from inadvertance or mistake.... Our courts have uniformly required an insurer seeking to defeat liability on the ground of fraud and false swearing to fully meet the requirements of [the precedessor to Article 21.19].

*Id.* at 829.[9]

*Vernon,* on which the Texas court in *Skatell* relied, was an appeal from an action on a personal property insurance policy for the loss of jewelry. After the suit was filed, the daughter of the assured-plaintiff gave a sworn statement to the insurer (Aetna) that the alleged burglary was a sham, staged by the daughter, her mother, and the plaintiff. On the eve of trial, she renounced the confession in another sworn statement. The District Court granted summary judgment for Aetna, finding that the daughter's two conflicting affidavits established "misrepresentation" in the words of the policy [10] as a matter of law.

In reversing the Trial Court's summary judgment, Judge Hutcheson for this Court but over a powerful dissent of then Chief Judge Tuttle looked to Articles 21.16 and 21.19 as they "bespeak the public policy of Texas in insurance matters." *Id.* at 89. Such statutes are "construed liberally to accomplish the legislative purpose, with the evil to be remedied kept clearly in view." *Id.*[11]

The policy plainly revealed by these provisions is one flatly opposed to the use of forfeiture clauses to avoid the obligations of insurance contracts solely upon a showing that the insured has made, at any time, a false statement with respect to the insurance or the subject thereof. Under the statutory scheme, only those falsehoods which are ... material, fraudulently made, and which mislead the insurer and cause it to lose some valid defense, if made after the loss occurs, may be made the basis for voiding a policy pursuant to a forfeiture clause. *Id.*

This Court opined that the Texas Legislature had written Articles 21.16 and 21.19 to cover, in precise terms, certain false statements—in applications for insurance or proofs of loss—because those were the most usual, sometimes only, and thus most important communications between assured and insurer.

These are the only kinds of statements, in the vast majority of cases, which the insured will ever make to the insurer, and are by far the most important which can be made, for the former serves to provide the information upon which the insurer determines to accept or refuse the risk, and the latter notifies the insurer of the occurrence of the risk insured against and the circumstances surrounding it.

*Id.* at 89. The Court did, however, infer a legislative intent to include other communications—such as those made during the investigation of a loss—within the protections afforded consumers in Articles 21.16 and 21.19.

The Legislature having specifically prohibited the forfeiture of policies because of falsity (unless the insurer can demonstrate existence of the statutory prerequisites to voiding the policy) in even those communications with the insurer upon which the latter might ordinarily be expected to rely most, it follows that false

---

9. We point out that the Texas Supreme Court found this judgment to be "a correct one and ... the principles of law ... correctly determined." *See* Tex.R.Civ.P. Rule 483.

10. As in *Skatell,* the misrepresentation clause in *Vernon* was not materially different from Aetna's here, n.2, *supra.*

11. 32 Tex.Jur.2d § 222 (1962) states as to Article 21.16:
   The statute is remedial, and was designed to remedy what the legislature must have deemed an evil, namely, that for many years prior to the enactment of the statute, insurance companies, as a general rule, embodied in their policies stipulations making many things warranties that, when the policy was sought to be enforced, appeared to be immaterial. These stipulations were always embodied in the printed forms used, and it was that supposed evil that the legislation was intended to remedy.

statements of lesser consequence, such as the affidavits in this case, though not specified in the statute are nonetheless included within the same prohibition. *Id.* at 89–90.

Finally, after concluding that the issue was controverted so that summary judgment was inappropriate and in remanding for a trial on the issue, Judge Hutcheson's opinion concluded that "the mere fact of making inconsistent statements does not establish fraud or attempted fraud under the policy as a matter of law." *Id.* at 90.

Consequently, we hold that the statements made by the assureds come within "proofs of loss" under Article 21.19. Aetna's misrepresentation clause voids the fire policy only if Aetna proves that the Guyneses' false statements (1) were fraudulently made, (2) misrepresented a fact material to Aetna's liability under the policy, and (3) misled Aetna and caused it to waive or lose some valid defense to the policy. In short, Aetna must show that they were purposely and significantly hurt by the Guyneses' false statements.

█ In reviewing the District Court's action here, we emphasize again that a motion for directed verdict should be granted only "[i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict." *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc); *Cora Pub, Inc. v. Continental Casualty Co.,* 619 F.2d 482, 484 (5th Cir.1980). In making our review, we consider all the evidence "in the light and with all reasonable inferences most favorable to" Aetna, which opposes the motion. *Boeing,* 411 F.2d at 374; *Cora Pub,* 619 F.2d at 484.

We find, and Aetna points out, very few evidentiary facts in the record which categorically prove the Guyneses' fraudulent intent.[12] But fraud or fraudulent intent is seldom proved by categorical facts. Rather, such a finding ordinarily arises as an inference. However, we need not now decide whether the evidence here is "of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment" might find such an intent, *Boeing,* 411 F.2d at 374, since Aetna fails on the third element.

Aetna also argues that the original cost of the house and the alibi of Mr. Guynes were material to its liability under the policy because the former implied a possible financial motive to, and the latter an opportunity for, arson. Clearly, there was sufficient evidence to go to the jury on the element of materiality to the insurers' liability. But, as with the element of fraudulent intent, we need not now reach this issue.

It is evident that Aetna was never misled by the Guyneses' declarations and thereby caused to waive or lose some valid defense to the policy. Aetna has not yet paid on the policy[13] nor has it waived or lost any valid defense under it. Indeed, it urged, though unsuccessfully, the defense of arson. It gave no proof at trial nor offered any suggestion on appeal that it was so misled.[14] For this reason, we affirm the Trial Court's action below.

---

**12.** Aetna's fire investigator did testify that while he was interviewing Mr. Guynes for his statement after the loss, when Mr. Guynes mentioned that the Guyneses had paid $8000 or $10,000 for the old house, Mrs. Guynes "literally screamed. Said, 'You blew it old man. It is twenty-two thousand.'"

Aetna does not contend that this evidence shows a fraudulent intent in Mr. Guynes' original statements about where he was on the night of the blaze.

**13.** Aetna obtained a stay of the judgment and filed a supersedeas bond pending this appeal.

**14.** *Cf. Fidelity-Phenix Fire Insurance Co. v. Sadau,* 167 S.W. 334, 335–36 (Tex.Civ.App.—Amarillo 1914, no writ) (trial court's refusal to give special instructions on misrepresentation upheld because "the insurance company has not exhibited any pleading, nor does the evidence raise the issue that it has in any wise been misled, or on account of the proof of loss, by virtue of the misrepresentation therein, it has waived or lost any valid defense to [the] policy" under the predecessor to Article 21.19).

### New Trial Denied

Aetna also contends that the errors the District Court made during trial, individually or in sum, required that Court to grant Aetna's motion for a new trial.

The first error was the exclusion of Aetna's evidence of Mrs. Guynes' role in a separate insurance fraud. Aetna contends that, under F.R.Evid. 404(b),[15] it could have shown Mrs. Guynes' intent to commit arson through her intimate involvement in an alleged conspiracy with Barbara Morgan, apparently a relative by marriage, to commit insurance fraud at the very same time that her house burned down.[16]

■ Rule 404(b) is most frequently employed in criminal cases. Under it evidence of other crimes, wrongs, or acts is admissible to prove motive, opportunity, and intent. *See generally United States v. Beechum,* 582 F.2d 898, 910–12 (5th Cir.1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). Generally, though, whether proof of such a collateral matter is relevant to the immediate issues and whether "its probative value is substantially outweighed by the danger of unfair prejudice," F.R.Evid. 403, is left within the sound discretion of the trial judge. *United States v. Cochran,* 499 F.2d 380, 387–88 (5th Cir.1974), *cert. denied,* 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 825.

■ Even assuming, for argument, that Aetna could prove all that it alleges, at least one link is missing to connect Mrs. Guynes' acts with an intent to commit arson. Aetna makes no claim that it could prove Mrs. Guynes intended to take part in Morgan's scheme, or even knew about it, or that the microwave was involved in it. *Cf. Payne v. Hartford Fire Insurance Co.,* 409 S.W.2d 591, 594 (Tex.Civ.App.—Beaumont 1966, writ ref'd n.r.e.). The Trial Judge in his discretion could refuse to admit evidence of the alleged insurance fraud, where an intent to commit that fraud can not be shown, to prove Mrs. Guynes' intent to commit arson.[17]

Aetna next argues that the District Court erred by paring, in the middle of trial, the number of Aetna's fire investigators who could testify and then allowing the Guyneses to impeach the remaining expert with the written report of the other, excluded expert.

■ It is well within the discretion of a district court to limit the number of expert witnesses who testify at trial. *See, e.g., Ruud v. United States,* 256 F.2d 460 (9th Cir.), *cert. denied* 358 U.S. 817, 79 S.Ct. 28, 3 L.Ed.2d 59 (1958); *Chapman v. United States,* 169 F.2d 641 (10th Cir.), *cert. denied* 335 U.S. 860, 69 S.Ct. 134, 93 L.Ed. 406 (1948). A trial judge can exercise this discretion before trial, *see* F.R.Civ.P. Rule 16(4), or during trial, after one party has put all its experts on the stand, *see Ruud,* 256 F.2d at 462. The Trial Judge was simply limiting cumulative testimony,[18] and ruling on this subject during trial but before Aetna had put its experts on the stand was not error.

Neither was it error to allow the Guyneses to use the written report of the fire expert barred from testifying to impeach the other expert's testimony. Since the

---

**15.** **(b) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**16.** In its Proposed Joint Pretrial Order, Aetna states that it could prove that an incendiary fire occurred at Morgan's business on April 2, 1980, about two months before the Guyneses' fire; Mrs. Guynes is Morgan's only alibi witness; Morgan is claiming that a Toshiba microwave

oven was stolen from her business prior to the fire; Mrs. Guynes came into a local supply store shortly after Morgan's fire to buy a butcher block stand for a microwave oven; and a Toshiba microwave oven was in Mrs. Guynes' home after the Morgan fire.

**17.** Quite properly, the District Court imposed no limits on Aetna's inquiries into the Guyneses' own previous fire insurance claims.

**18.** Aetna's two expert witnesses were employed by the same investigation firm at the time of the Guyneses' fire and were partners in their own firm at the time of trial.

Court's limitation on Aetna to just one expert was merely conditional,[19] Aetna's failure to request the use of the second expert in rebuttal amounts to a waiver of their objection. Aetna could reasonably have expected the report to be used at trial, and should thus have kept its second witness accessible,[20] since the report was clearly helpful to the Guyneses and was furnished to them by Aetna during pre-trial discovery.

■ Aetna next claims, this time correctly, that the District Court erred in not allowing it to read portions of the Guyneses' depositions directly into evidence. Rule 32(a)(2), F.R.Civ.P.,[21] has been consistently interpreted to allow a party to introduce the deposition of an adversary regardless of the adversary's availability at trial. *See, e.g., Coughlin v. Capitol Cement Co.,* 571 F.2d 290, 308 (5th Cir.1969).

But such error is harmless where the substance of the deposition testimony in question is made available to the jury during trial. *See, e.g., Coughlin,* 571 F.2d at 308; *Pingatore v. Montgomery Ward & Co.,* 419 F.2d 1138, 1142 (6th Cir.1969), *cert. denied,* 398 U.S. 928, 90 S.Ct. 1818, 26 L.Ed.2d 90 (1970). Clearly, counsel for Aetna should have been able to present the Guyneses' prior representations through reading their deposition testimony in court. But by calling the Guyneses as adverse witnesses at trial and using their previous deposition testimony to impeach their testimony on the stand, Aetna brought the prior inconsistent statements of the Guyneses fully before the jury. The jury believed the Guyneses. We find no reversible error.

Finally, Aetna argues that counsel for the Guyneses made improper and prejudicial jury arguments. Upon examination of the record as a whole and viewing the alleged improper statements in the context of otherwise unobjectionable arguments, and in light of the lack of objection by Aetna at trial, we find no reversible error. *See Standard Fire Insurance Co. v. Reese,* 584 S.W.2d 835, 839–40 (Tex.1979).

### Judgment for $25,000

Lastly, Aetna complains that the District Court erred in entering judgment for the Guyneses for the full $25,000 value of the policy, in the absence of a jury finding that the wood house was a total loss. They contend that there was in fact no loss from the fire, since testimony at trial showed that the value of the Guyneses' land was unchanged after the house burned down.

This argument can be disposed of simply. In its Proposed Joint Pretrial Order, Aetna expressly stipulated in its Admissions of Fact, "That, after the fire, the dwelling structure [in Onalaska] had a value of zero dollars." The jury never made a finding on total loss because the point was never in issue.

AFFIRMED.

---

**19.** The Trial Judge made it clear he would let Aetna put its second expert on the stand in rebuttal should the Guyneses put on their own expert witness. There is no indication he would not have similarly allowed Aetna to rebut the Guyneses' use of the report, if they had so requested.

**20.** Aetna allowed its second expert to return to San Antonio after his direct testimony was precluded.

**21.** (2) The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a public or private corporation, partnership or association or governmental agency which is a party may be used by an adverse party for any purpose.