Opinion filed July 23, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed July 23,
2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                  ___________

 

                                                          No. 11-08-00031-CV 

                                            __________

 

                CHUSUKDI
AND SOPINTRA TEMCHAROEN, Appellants

 

                                                             V.

 

                                    UNITED
FIRE LLOYDS, Appellee

 



 

                                         On
Appeal from the 136th District Court

                                                       Jefferson
County, Texas                                           

                                                Trial
Court Cause No. D-177,757

 



 

                                                                   O
P I N I O N

 








Chusukdi
and Sopintra[1] Temcharoen
filed this suit against United Fire Lloyds for breach of contract of their
homeowner=s insurance
policy.  They alleged that United Fire Lloyds failed to completely pay for
damages they incurred as a result of Hurricane Rita.  The homeowner=s policy covered damage to
the house, and in an endorsement, United Fire Lloyds also agreed to reimburse
the Temcharoens for additional living expenses they incurred as a result of
damage to their house.  United Fire Lloyds filed a traditional motion for
summary judgment, claiming its right to declare the policy void because
Sopintra Temcharoen had submitted Areceipts@ for living expenses that
she admitted had not been paid at the time she provided the Areceipts.@  Finding that the
anti-technicality statute, Tex. Ins.
Code Ann. '
705.003 (Vernon 2009), did not apply and that Sopintra had made a fraudulent
statement concerning living expenses she had incurred, the trial court granted
United Fire Lloyds=s
motion.  The court stated that she had Afraudulently
claim[ed] a loss where none existed.@ 
Because we hold that Section 705.003 is applicable, that United Fire Lloyds did
not meet the requirements of Section 705.003(b), and that there are fact
questions, we reverse the summary judgment in favor of United Fire Lloyds and
remand for a trial on the merits.

Standard
of Review

The
standards for reviewing a summary judgment are well established:

(1)
The movant for summary judgment has the burden of showing that there is no genuine
issue of material fact and that it is entitled to judgment as a matter of law.

 

(2)
In deciding whether there is a disputed material fact issue precluding summary
judgment, evidence favorable to the non-movant will be taken as true.

 

(3)
Every reasonable inference must be indulged in favor of the non-movant and any
doubts resolved in its favor.

 

Nixon v. Mr.
Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985).  The appellate court Amust consider whether
reasonable and fair-minded jurors could differ in their conclusions in light of
all of the evidence presented@
and may not ignore Aundisputed
evidence in the record that cannot be disregarded.@  Goodyear Tire & Rubber Co. v. Mayes,
236 S.W.3d 754, 755, 757 (Tex. 2007).  When a defendant moves for summary
judgment on the basis of an affirmative defense, he must expressly present and
conclusively prove each essential element of that defense.  City of Houston
v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  Where,
as here, a trial court=s
order granting summary judgment does not specify the ground or grounds relied
on for its ruling, summary judgment will be affirmed on appeal if any of the
summary judgment grounds advanced by the movant are meritorious.  Dow Chem.
Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001).








Background
Facts

Prior
to declaring that the policy was void, United Fire Lloyds paid approximately
$85,214 to the Temcharoens under their homeowner=s
policy, including $64,681 for damages to their dwelling, $12,808 for damages to
their personal property, and $7,725 for additional living expenses. In their
suit, the Temcharoens claim that additional money is owed for damage to their
dwelling and personal property and for additional living expenses that they
incurred from September 28, 2005, until mid-September 2006.

As
a result of Hurricane Rita and the damage to their residence, the Temcharoens
rented a room from friends and former neighbors, Hugh and Peggy Phillips, who
also lived in Beaumont.  In her deposition and affidavit, Sopintra testified
that they paid the Phillips approximately $24,625 for a room from September 28,
2005, until September 2006; United Fire Lloyds reimbursed them $7,725 in
February 2006 for the period from September 28 until that time.  Sopintra
described their agreement with the Phillipses as an oral agreement to rent the
room for $75 per day.

On
January 13, 2006, Sopintra faxed to United Fire Lloyds five receipts that she
said were from Peggy Phillips for Aroom
and board@ and that
totaled $7,725.  She later testified that the receipts were for room rental
only.  United Fire Lloyds issued a reimbursement check in that amount on February
9, 2006, for the additional living expenses; the check was delivered to
Sopintra on February 10.

Sopintra
continued to fax to United Fire Lloyds Areceipts@ from Peggy Phillips in
amounts of $1,050 to $2,625.  However, Sopintra=s
cover page would state, for example, AThis
is an invoice for the allowance living expenses (ALE), a total of
$2,100.00 from 2/6/06 to 3/5/06@
(emphasis added).  According to Sopintra=s
testimony, she gave checks to Mr. Phillips, but he held the checks.  Therefore,
she could not provide checks as proof of payment to United Fire Lloyds. 
Sopintra admitted at her deposition in April 2007 that she had not Apaid@ the Phillipses the $7,725 before submitting Areceipts@ to United Fire Lloyds. 
She also testified, and stated in an affidavit, that Patrick Peden, an employee
of United Fire Lloyds, had instructed her as follows:

[T]o break down my
additional living expenses into smaller increments and submit those to United
Fire Lloyds as receipts in order to get paid.  In so doing, I was not intending
to misrepresent anything, but was only doing as I had been instructed.

 








English
is not Sopintra=s
first language, and her deposition is often confusing.  Based on her testimony,
which we must accept as true for summary judgment purposes, Sopintra gave
checks to the Phillipses, but they were not cashed until the Temcharoens had
money in the bank for the checks to be honored.  A reasonable inference from
her testimony is that she viewed her obligation to furnish United Fire Lloyds
with evidence of living expenses she had incurred even though cash had not been
transferred from their account to the Phillipses.  In her summary judgment
affidavit, Sopintra stated that she personally paid Mr. Phillips over $20,000
in rent for the time that she stayed in his home, that she knew that Mr.
Phillips ultimately received cash when the checks were honored, and that there
was no agreement between them and Mr. Phillips concerning what Mr. Phillips
would do with the rent money.  In another summary judgment affidavit, Mr.
Phillips confirmed their agreement for rent of $75 per day while the Temcharoens= house was under
construction and stated that ASopintra
Temcharoen paid [him] over $20,000 in rent for the time she stayed in [his]
home.@  There was a
notation on one check:  ACalled
Vickie at bank about holding checks 6 - 12 months.@  Sopintra testified in her deposition that
probably Mr. Phillips wrote that notation, but she did not know.  In answer to
a question by United Fire Lloyds as to why she had not furnished the Phillipses
social security numbers when it requested the numbers, Sopintra said that she
relayed the message to the Phillipses, but she did not have those numbers. 
Sopintra testified that Mr. Phillips told her that United Fire Lloyds could
call him if it needed his social security number.

The
record includes a summary judgment affidavit from Theresa Edwards, a teller
with Five Point Credit Union.  In her affidavit, Edwards stated the following:

2. 
I am employed with Five Point Credit Union. In my position as teller with Five
Point Credit Union, I personally handled the transactions with Hugh Phillips
regarding Check Nos. 2010, 2011 and 2012 and drawn on the account of Sopintra
Temcharoen, [A]ccount No. 923204.

 

3. 
On September 6, 2006, Mr. Hugh Phillips, Texas DL # 02812614, presented Check
No. 2010 in the amount of $7,725.00 to me, as teller for Five Point Credit
Union, for payment.  The check was cashed in full and the amount of $7,725.00
was given to Mr. Phillips.

 








4.  On September 7, 2006, Mr. Hugh Phillips, returned to the
bank and presented Check Nos. 2011 and 2012, to me for payment.  I cashed both
checks, in the amounts of $8,000.00 and $4,900.00, respectively, and presented
Mr. Phillips with cash in said amounts.

Check
No. 2010 for $7,725 was dated February 16, 2006, and it apparently was to pay
the Phillipses after United Fire Lloyds had given Sopintra that amount on
February 10.  Check No. 2011 was dated February 24; and Check No. 2012 was
dated June 5.  In addition to those amounts, Sopintra testified that on
September 29 she had written Check No. 2013 and obtained $5,000 in cash from
her money market account at Five Point Credit Union in order to pay Hugh
Phillips $4,000 in cash for living expenses.  United Fire Lloyds=s payments for additional
living expenses were limited to the $7,725 payment.

United
Fire Lloyds=s
Motion for Summary Judgment

United
Fire Lloyds filed its motion for summary judgment based upon two grounds:  (1)
the affirmative defense of common-law fraud and (2) a specific policy provision
in the homeowner=s
policy that voids the policy if there is an event of concealment,
misrepresentation, or fraud.  The Temcharoens=s
homeowner policy in ASECTION
I AND II B CONDITIONS@ provided that the policy would be void if
there was concealment or fraud:

2. 
Concealment or Fraud.  This policy is void as to you and any other insured,
if you or any other insured under this policy has intentionally
concealed or misrepresented any material fact or circumstance, made false
statements or committed fraud relating to this insurance, whether before or
after a loss.

 

In its motion,
United Fire Lloyds asserted that Sopintra had admitted that she had made a
Paragraph 2 misrepresentation and also committed common-law fraud because
she had provided Areceipts@ for additional living
expenses when she had not made an actual payment.  It appears that she had not
given a check to Mr. Phillips when she sought reimbursement of $7,725.  United
Fire Lloyds gave her a check for $7,725 on February 10, 2006, and she gave Mr.
Phillips a check dated February 15, 2006, for that amount.  

United
Fire Lloyds claims that Sopintra=s
fraudulent act gave it the right to void the entire policy under the quoted
Paragraph 2.  Citing In re FirstMerit Bank, N.A., 52 S.W.3d 749, 758
(Tex. 2001), United Fire Lloyds argued the additional ground to the trial
court, and argues here, that Sopintra=s
actions established the elements of common-law fraud aside from the quoted
paragraph in the policy:

(1)
the plaintiff made a representation to the defendant;

(2)
the representation was material;

(3)
the representation was false;








(4)
when the plaintiff made the representation, the plaintiff

(A) knew the representation was false, or

(B) made the representation recklessly, as a positive assertion, and 

without knowledge of its truth;

(5)
plaintiff made the representation with the intent that the defendant act on it;

(6)
the defendant relied on the representation; and

(7)
the representation caused the defendant injury.

In
her response to United Fire Lloyds=s
motion for summary judgment, Sopintra claimed (and  testified) that she was
following the instructions of Patrick Peden, an adjuster with United Fire
Lloyds, who told her Ato
submit her additional living expenses as receipts and to break down those
expenses to smaller time periods and then [United Fire Lloyds] would pay [her]
for those expenses.@
Therefore, the Temcharoens claimed that giving documents labeled as Areceipts@ was not a fraudulent
misrepresentation.  It appears that Sopintra believed that Peden knew that she
had only incurred a liability for the additional living expenses and told her
to submit them as receipts as she incurred the expenses.  Sopintra also claimed
that United Fire Lloyds could not and cannot show any injury.

In
response to United Fire Lloyds=s
reliance on Paragraph 2 of Sections I and II of the policy, the Temcharoens
asserted that the anti-technicality statute, Section 705.003, applied that
United Fire Lloyds failed to meet the requirements of Section 705.003(b), and,
therefore, that Paragraph 2 had no effect because of the statute.  

Section
705.003, the AAnti-technicality
Statute@

In
their first issue, the Temcharoens argue that Section 705.003 applies and that
Paragraph 2 should be given no effect.  Section 705.003 reads as follows:

(a)
An insurance policy provision that states that a misrepresentation, including a
false statement, made in a proof of loss or death makes the policy void or voidable:

 

(1)
has no effect; and

 

(2)
is not a defense in a suit brought on the policy.

 








(b)
Subsection (a) does not apply if it is shown at trial that the
misrepresentation:

 

(1)
was fraudulently made;

 

(2)
misrepresented a fact material to the question of the insurer=s liability under the
policy; and

 

(3)
misled the insurer and caused the insurer to waive or lose a valid defense to
the policy.

 

United
Fire Lloyds argues that Sopintra=s
misrepresentation did not invoke Section 705.003 because her submission of the
receipts for the $7,725 payment was not Amade
in a proof of loss@ as
required by Section 705.003(a).  United Fire Lloyds states that A[a] proof of loss is
typically a formal document sworn to by the insured that verifies the insured=s claim.@  Although accepted by the
trial court below, this argument elevates form over substance.[2]

There
are no cases addressing this issue under Section 705.003, which became
effective April  1, 2005.  There are, however, several cases under former Tex. Ins. Code art. 21.19 and the
earlier Tex. Rev. Civ. Stat. art.
5046, the predecessor statutes to Section 705.003, that contained substantially
similar language.  Those cases are instructive and support a conclusion that an
alleged misrepresentation does not have to be under oath or in a formal sworn
proof of loss for Section 705.003 to apply.    








The
early case of Fireman=s
Fund Ins. Co. v. Reynolds, 85 S.W.2d 826 (Tex. Civ. App.CWaco 1935, writ ref=d), involved former Article
5046.  The insured lived in San Antonio, and she rented a house in Waco.  A
tenant had moved into the house on June 2, 1933, and moved out on June 28 or
29.  A few hours later, the house was totally destroyed by fire.  The insurance
company argued that the policy by its terms became void because the house had
been vacant and unoccupied on March 4, 1933, and remained so for more than ten
days.   At the request of the insurance company, the insured was examined under
oath concerning her loss.  She testified that her house became vacant on March
4, 1933, and remained in that condition until June 2, 1933.  It turned out at
trial that her brother had actually occupied the house during that period.  The
insurance company argued that her false statement rendered the policy void
because her statement was made Ain
connection with her proof of loss.@ 
Id. at 828.  The trial court found that the insured had not made a
material misrepresentation calculated to mislead the insurance company or cause
it to waive or lose any valid defense to the insured=s claim. The Waco court discussed former
Article 5046:

Article 5046 of our
Revised Statutes provides specifically that no misrepresentation or false
statement in proofs of loss shall constitute any defense to a suit upon
an insurance policy unless it be shown on the trial that such false statement
was fraudulently made and misrepresented a fact material to liability and that
the insurer was thereby misled and caused to waive or lose some valid defense. 
The examination of appellee in this case was within such provision of the
statute.  The false statement relied on to work a forfeiture of the rights
of the insured under a policy must have been willfully made and must not have
resulted from inadvertence or mistake.  Lion Fire Ins. Co. v. Starr,
71 Tex. 733, par. 4, 12 S.W. 45 [Tex. 1888].  Our courts have uniformly
required an insurer seeking to defeat liability on the ground of fraud and
false swearing to fully meet the requirements of the article above quoted (emphasis
added) (one citation omitted).

 

United
Fire Lloyds attempts to distinguish the Reynolds case by pointing out
that the insured in that case made the statement under oath whereas Sopintra
did not submit the receipts under oath.  That does not appear to be the
defining characteristic as viewed by the Reynolds court.  The defining
characteristic was that the statement was made in connection with the insured=s proof of loss, and the
court gave the term Aproof
of loss@ a common
sense meaning rather than a technical one.  In this case, Sopintra presented
the receipts in connection with her proof of loss.  United Fire Lloyds admits
as much because it repeatedly asserts that she fraudulently gave it the
receipts to show a loss when there was no loss.








In
United States Fire Insurance Co. v. Skatell, 596 S.W.2d 166 (Tex. Civ.
App.CTexarkana 1980,
writ ref=d n.r.e.),
the insurance company argued that the Aanti-technicality
statute,@ former
Article 21.19, did not apply because the insured=s
misrepresentations occurred outside a formal proof of loss document.  Skatell
had sued the insurance companies to collect insurance benefits for jewelry that
allegedly had been stolen from his home.  The insurance company orally examined
him under oath, and during the examination, he denied having any previous
criminal record.  Later, at another oral examination, he admitted a record of
several offenses of fraud, hot checks, and theft by false pretenses.  The
policies contained a provision that the entire policies would be void if,
before or after a loss, the insured concealed or misrepresented any material
fact or circumstance concerning the insurance.  The court found that former
Article 21.19 applied and that there was no proof that the false statements
were fraudulently made, were material to the issue of liability, or caused the
insurers to waive or lose any valid defense to the policies.  Id. at
169.  

In
response to the insurance companies=
argument that former Article 21.19 did not apply, the Skatell court
reasoned that A[t]he
examination under oath, although not a formal proof of loss, nevertheless is an
elaboration upon and partakes of the nature of a proof of loss, and therefore
comes within the statute even though not specifically mentioned@ (citing the Reynolds
case).  The court then agreed with the Fifth Circuit=s decision in Vernon v. Aetna Insurance Co.,
301 F.2d 86 (5th Cir. 1962), where the Skatell court stated:

[I]f false
statements in the more formal proof of loss will not void the policy unless
they are fraudulent, material and harmful to the insurer, certainly the intent
of the statute is that false statements of lesser consequence should not be
allowed to void a policy unless they, too, meet such requirements.

 

Skatell,
596 S.W.2d at 169.  Under the reasoning in Vernon, Sopintra=s Alesser consequence@ actions (being not under oath) in submitting
the receipts as proof of her loss did not have to be under oath for her to have
the benefit of Section 705.003.  United Fire Lloyds should not be allowed to
void the entire policy unless United Fire Lloyds proved the three elements in
Section 705.003(b).

To
the same effect is Aetna Casualty & Surety Co. v. Guynes, 713 F.2d
1187 (5th Cir. 1983).  The insurance company argued that policy-holders giving
false statements during an insurance company=s
investigation of the loss fall outside the protections of former Article 21.19
and that to avoid liability the insurer had only to satisfy the general
requirements that the false statements were Awillfully
made with respect to a material matter and with the intention of thereby
deceiving the insurer.@ 
713 F.2d at 1190.  Disagreeing, the court pointed out that the Texas
Legislature had written former Tex. Ins.
Code arts. 21.16 and 21.19 to cover false statements in applications for
insurance or proofs of loss.  The policy behind these two provisions was:








[O]ne
flatly opposed to the use of forfeiture clauses to avoid the obligations of
insurance contracts solely upon a showing that the insured has made, at any
time, a false statement with respect to the insurance or the subject thereof. 
Under the statutory scheme, only those falsehoods which are . . . material,
fraudulently made, and which mislead the insurer and cause it to lose some
valid defense, if made after the loss occurs, may be made the basis for voiding
a policy pursuant to a forfeiture clause.  

Id. at
1191 (citing Vernon, 301 F.2d. at 89).  We hold that Section 705.003
applies even though Sopintra=s
alleged misrepresentation of submitting Areceipts@ was not done in a formal
proof of loss form.  We next examine whether United Fire Lloyds met the
requirements of Section 705.003(b).      The first requirement under Section
705.003(b) was that Sopintra=s
action had to be fraudulent.  As we noted earlier, the Reynolds court in
1935 recognized that Texas law required that a false statement relied on to
work a forfeiture of the rights of the insured under a policy Amust have been willfully
made and must not have resulted from inadvertence or mistake.@  Reynolds, 85
S.W.2d at 829.  Because this is an appeal from a summary judgment, we have to
view Sopintra=s
testimony as true.  Her testimony was that Peden, the adjuster for United Fire
Lloyds, told her to submit her additional living expenses as receipts to be
paid.  Her testimony presented a fact question.  Whether her submission of the
receipts was an innocent misunderstanding of Peden=s instructions or an intentionally false
statement depends on the credibility of the witnesses.  She continued to fax
the Phillipses=
receipts to United Fire Lloyds and stated in her cover page that she was
sending an invoice.  Those actions could indicate an innocent
misunderstanding.  Reasonable and fair-minded jurors could differ in their
conclusions in light of the evidence and all of the other evidence presented.

The
endorsement to the Temcharoens=
policy provided that United Fire Lloyds would cover the following:

a. 
additional living expense, meaning reimbursement of any necessary and
reasonable increase in living expense you incur so that your household can
maintain its normal standard of living.

 

If Sopintra read
the policy, which we do not know, she may have focused on Aexpense you incur@ rather than the term Areimbursement.@  She may not have read the
policy.  Cancellation of their entire policy, a policy that primarily was for
damages to their house, should not be summarily done.   There is a genuine
issue of material fact that precluded summary judgment.








Section
705.003(b)(3) required United Fire Lloyds to prove that Sopintra=s Amisrepresentation@ caused it to waive or lose a valid defense to
the policy.  Both the Fifth Circuit and the Fourteenth Court of Appeals have
interpreted the phrase Aloss
of an otherwise valid defense@
to mean that a defense is lost, in the context of former Article 21.19, when it
has been abandoned or compromised in such a way that it can no longer be
presented or litigated.  Guynes, 713 F.2d at 1192; Stokes v. State
Farm Lloyds, Inc., No. 14-95-01094-CV, 1997 WL 96608, at *3 (Tex. App.CHouston [14th Dist.] 1997)
(not designated for publication).  United Fire Lloyds has not demonstrated how
Sopintra caused it to waive or lose a valid defense to the policy.  In paying
$7,725, United Fire Lloyds did not lose a defense to the policy.  If Sopintra
did not actually incur those additional living expenses, that matter can be
litigated.  

United
Fire Lloyds motion for summary judgment did not satisfy the requirements of Section 705.003(b). 
The Temcharoens= first
issue is sustained.

Misrepresentation
or Common-Law Fraud

In
their second issue, the Temcharoens argue that the trial court erred in
granting United Fire Lloyds summary judgment on the ground of common -law
fraud.  Although United Fire Lloyds refers to its second affirmative defense as
common-law fraud, the defense is more commonly described  as the defense of
misrepresentation to a breach of contract action when it is an insurance
contract.  Because there are fact questions, we hold that the trial court could
not grant summary judgment on this ground.  United Fire Lloyds did not
establish as a matter of law that Sopintra intended to deceive it.

In
Union Bankers Insurance Co. v. Shelton, 889 S.W.2d 278 (Tex. 1994), the
supreme court held that an intent to deceive must be proved to cancel a health
insurance policy within two years of the date of its issuance when the
cancellation is based on the insured=s
misrepresentation in the application for insurance.  The supreme court cited
and relied on numerous Texas cases that it said stand for the following
proposition:

[I]n
Texas, an insured=s
intent to deceive must be shown in order for an insurance company to
successfully raise a defense of misrepresentation on the basis of a false
statement made by the insured in the application for any type of insurance
[policy].[3]

Shelton,
889 S.W.2d at 282.








Although
United Fire Lloyds referred to the elements of common-law fraud as stated in FirstMerit
Bank, that case involved fraud in the defense of inducement to an
arbitration agreement.  To void an insurance policy for misrepresentation, the
supreme court has held that the insurer must plead and prove the following: (1)
the making of a representation; (2) the falsity of the representation; (3)
reliance on the misrepresentation by the insurer; (4) the intent to deceive on
the part of the insured in making the misrepresentation; and (5) the
materiality of the misrepresentation.  Mayes v. Mass. Mut. Life Ins. Co.,
608 S.W.2d 612, 616-17 (Tex. 1980) (holding that fraudulent intent was not
established as a matter of law); see Garcia v. John Hancock Variable
Life Ins. Co., 859 S.W.2d 427 (Tex. App.CSan
Antonio 1993, writ denied).  In Garcia, the court held that the trial
court had erred in granting summary judgment because the insurer failed to
establish as a matter of law that the insured intended to deceive the insurer
when he made misrepresentations in his applications for life insurance.  Garcia,
859 S.W.2d at 431.  We see no reason to treat misrepresentations in connection
with health or life insurance policies differently from misrepresentations in
connection with property insurance policies.

We
also see no reason to differentiate between a misrepresentation in an
application for insurance and a misrepresentation in connection with a proof of
loss in a policy of the type before us.  In both cases, the insurance company
is attempting to declare the entire policy void.  United Fire Lloyds did not
prove as a matter law for summary judgment that Sopintra had an intent to
deceive.  There are fact questions concerning whether the Areceipts@ were fraudulent as
required under Section 705.003(b) or as the Aintent
to deceive@ element of
a misrepresentation or common-law fraud defense.  

The
false statement relied on to work a forfeiture of the rights of the insured
under a policy must have been willfully made and must not have resulted from
inadvertence or mistake.  The record does not establish as a matter of law that
Sopintra intended to deceive United Fire Lloyds.  Sopintra continued to fax Areceipts@ with a cover page stating
that she was sending an Ainvoice.@  We sustain the
Temcharoens= second
issue.  We need not reach their other issues.








This
Court=s Ruling

The
summary judgment of the trial court is reversed, and the cause is remanded for
a trial on the merits. 

 

 

TERRY McCALL

JUSTICE

 

July 23, 2009

Panel consists of:  Wright, C.J.,


McCall, J., and Strange, J.









[1]We note that ASopintra@ is also called ASopin@ in the body of the notice of appeal.





[2]The trial court=s
statement that Ano loss had occurred@
when Sopintra presented the receipts is probably correct as a technical matter;
however, taking Sopintra=s testimony as true, the Temcharoens had incurred a
liability for the additional living expenses they had incurred to that date,
and that liability would become a loss when the Phillipses received payment.





[3]Two years earlier, the Fifth Circuit explained that a
common-law misrepresentation defense under Texas law requires a showing that
the misrepresentation was made willfully with the intent to deceive or to
induce the insurance company to issue the policy.  The court noted that even a
material misrepresentation does not defeat recovery if it is made innocently
and in good faith.  Enserch Corp. v. Shand Morahan & Co., 952 F.2d
1485, 1496-97 (5th Cir. 1992) (involving professional services policies
relating to the Washington Public Power Supply System nuclear power project).